# United States Court of Appeals
## For the First Circuit

No. 99-2049

ARTUR MANUEL SOUSA,

Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF

THE BOARD OF IMMIGRATION APPEALS

Before

Boudin and Lipez, Circuit Judges,

and Casellas,* District Judge.

William E. Graves, Jr. with whom Desai & Graves was on brief for petitioner.

Brenda M. O'Malley, Office of Immigration Litigation, Civil Division, Department of Justice, with whom David W. Ogden, Acting Assistant Attorney General, Civil Division, and Terri J. Scadron, Senior Litigation Counsel, Office of Immigration Litigation, were on brief for respondent.

*Of the District of Puerto Rico, sitting by designation.

September 22, 2000

BOUDIN, Circuit Judge. The petitioner in this case, Artur Manuel Sousa, is a 31-year-old native and citizen of Portugal. He entered the United States with his parents as an immigrant in 1971. On June 29, 1990, Sousa was convicted of unarmed robbery in the Superior Court in Cambridge, Massachusetts and given a suspended sentence of 3 to 5 years of imprisonment. In 1996, Sousa was found to be in violation of the terms of his probation and was ordered to serve the suspended prison term.

On September 3, 1998, the Immigration and Naturalization Service ("INS") began removal proceedings against Sousa, charging him with being removable under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") (codified at 8 U.S.C. § 1227(a)(2)(A)(iii) (Supp. II 1996)) [U.S. Code references are to this edition unless otherwise indicated], because he had been convicted of an aggravated felony as defined in section 101(a)(43)(F) of the INA (codified at 8 U.S.C. § 1101(a)(43)(F)). "Removal" is a generic term now used to include what used to be called deportation.

After two adjournments to allow Sousa to seek counsel, he appeared pro se on March 5, 1999, and the immigration judge decided to proceed with the removal hearing. After the judge explained to Sousa his procedural rights, Sousa admitted that he was a citizen of Portugal and that he had been convicted of unarmed robbery and sentenced to 3 to 5 years in prison. He also conceded that he was subject to removal for having committed a crime of violence for which the sentence was at least one year. See INA §§ 101(a)(43)(F), 237(a)(2)(A)(iii) (codified at 8 U.S.C. §§ 1101(a)(43)(F), 1227(a)(2)(iii)). The judge found Sousa removable for having been convicted of an aggravated felony and also found him ineligible for discretionary relief from removal.

Sousa then obtained legal counsel and appealed the removal order to the Board of Immigration Appeals ("BIA"). In his notice of appeal Sousa contended that the judge should have permitted him to apply for a waiver of deportation under INA section 212(c) or, alternatively, that the petitioner should have been permitted to apply for cancellation of removal under new INA section 240A.[1] Sousa did not claim, in the notice of

[1]INA section 212(c) (codified at 8 U.S.C. § 1182(c) (1994)) was repealed by section 304(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546, 597 ("IIRIRA"). It was replaced, with modifications, by INA section 240A (codified at 8 U.S.C. §

appeal or the brief submitted to the BIA, that he was not an aggravated felon.

The BIA dismissed the appeal on August 12, 1999. It rejected Sousa's claim that he should be permitted to apply for a section 212(c) waiver, noting that section 212(c) had been repealed, see note 1, above, and finding that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") had expressly made the repeal of section 212(c) effective for all cases commencing on or after April 1, 1997. IIRIRA § 309(a), (c)(1) (codified at 8 U.S.C. § 1101 note). This, of course, includes Sousa's case.

The BIA did not directly discuss the alternative claim for cancellation of removal under section 240A, seemingly because Sousa did not press that possibility when he briefed his case on review. While both section 212(c) and 240A provide for discretionary relief in similar terms, section 240A relief is expressly made unavailable to aggravated felons. INA § 240A (codified at 8 U.S.C. § 1229b). Sousa now appeals to this court in accordance with INA section 242 (codified at 8 U.S.C. § 1252), claiming for the first time that he is not removable as an aggravated felon. He also contends that he should have been permitted by the INS to apply for relief from removal.

---

1229b).

At the outset, the government argues that we lack subject matter jurisdiction over this appeal. Section 242(a)(2)(C) of the INA (codified at 8 U.S.C. § 1252(a)(2)(C)) provides in relevant part that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered" by the statutory provision making aggravated felons removable. The government's brief says that "[t]he Court's exercise of its authority to determine its jurisdiction in this case should go no further than determining that there is an administratively final order of removal against Sousa entered on the basis of the BIA's and immigration judge's facially legitimate finding that Sousa is removable for an aggravated felony conviction."

The government's position, from which it sensibly retreated at oral argument, is too broad. Under the INA, our jurisdiction is eliminated only <u>if</u> the petitioner is (1) an alien who is (2) removable for having committed one of the criminal offenses specified in the statute. Sousa challenges the existence of one of these jurisdiction-stripping facts: he argues that he has not committed a crime that renders him removable. To determine whether we lack jurisdiction over this case, we must therefore determine <u>whether</u> he is correct. Thus

INA section 242(a)(2)(C) is not a bar to our considering Sousa's claim that he is not removable as an aggravated felon. Other circuits have reached the same conclusion. E.g., Ye v. INS, 214 F.3d 1128, 1131 (9th Cir. 2000); Bell v. Reno, 218 F.3d 86, 89 (2d Cir. 2000); Galindo-Del Valle v. Attorney General, 213 F.3d 594, 598 (11th Cir. 2000); Lewis v. INS, 194 F.3d 539, 542 (4th Cir. 1999).

Alternatively, and with more basis, the government argues that we lack subject matter jurisdiction because Sousa failed to assert this claim--that he is not an aggravated felon--before the immigration judge and the BIA and thus failed to exhaust administrative remedies as required by INA section 242(d)(1) (codified at 8 U.S.C. § 1252(d)). That provision states in relevant part: "A court may review a final order of removal only if--(1) the alien has exhausted all administrative remedies available to the alien as of right . . . ." Obviously, Sousa has gone through the administrative proceeding; the problem is that he did not raise there the issue he now seeks to raise in this court.

If we were writing on a clean slate, it would be very tempting to treat Sousa's forfeit of his claim as something less than a jurisdictional objection. After all, in both criminal and civil cases coming from district courts, an appellate court

has the option to recognize "plain error," e.g., Fed R. Crim. P. 52(b); Fed. R. Evid. 103(d). Although the test is a stringent one, United States v. Olano, 507 U.S. 725, 732-35 (1993), it leaves open the opportunity for a reviewing court to avoid a miscarriage of justice in extreme cases. United States v. Gandia-Maysonet, 98-1144, slip op. at 9-10 (1st Cir. Sept. 13, 2000). The common law requirement of exhaustion is a fairly flexible rule with many judicially created exceptions. Davis, Administrative Law § 15.2 (3d ed. 1994).

Whatever our own views, we are bound by precedent to apply the INA exhaustion requirement in a more draconian fashion. The Supreme Court regards exhaustion requirements imposed by statute as more rigid than the common law doctrine,[2] even though (as here) the statutes are rarely explicit in ruling out exceptions. Not much precedent exists as to section 242(d), but it merely "restates" its precursor, former INA section 106(c) (codified at 8 U.S.C. § 1105a(c) (1994)). H.R. Conf. Rep. No. 104-828, 1996 WL 563320, at *478 (Sept. 24, 1996). And most circuits, including this one, have described former INA

[2] E.g., McCarthy v. Madigan, 503 U.S. 140, 144 (1992); Coit Independence Joint Venture v. Federal Sav. and Loan Ins. Corp., 489 U.S. 561, 579 (1989). In Sims v. Apfel, 120 S. Ct. 2080, 2086 (2000), the Supreme Court recently forgave a failure to exhaust administrative remedies in the Social Security context but that case is not relied upon by Sousa and appears to be distinguishable on multiple grounds.

section 106(c) as a jurisdictional bar where an issue sought to be raised in court was not raised in the agency.[3]

Even where statutes impose an exhaustion requirement the Supreme Court has, despite the rhetoric of jurisdiction, carved out exceptions. The best founded is one suggested by the Supreme Court, and explicitly recognized in this and other circuits, where a resort to the agency would be futile because the challenge is one that the agency has no power to resolve in the applicant's favor. Bernal-Vallejo v. INS, 195 F.3d 56, 64 (1st Cir. 1999); Ravindran, 976 F.2d at 762. See generally Mathews v. Eldridge, 424 U.S. 319, 329-30 & n.10 (1976). See also Singh v. Reno, 182 F.3d 504, 511 (7th Cir. 1999); Bagues-Valles v. INS, 779 F.2d 483, 484 (9th Cir. 1985). Sousa says that his case is analogous because the BIA had already rejected the same attack on aggravated felon status that he wishes to make in this case.

A close parsing of his claims and the BIA decision he relies upon as foreclosing them indicates that these claims were

---

[3]Mojsilovic v. INS, 156 F.3d 743, 748-49 (7th Cir. 1998); Perkovic v. INS, 33 F.3d 615, 619 (6th Cir. 1994); Asencio v. INS, 37 F.3d 614, 615-16 (11th Cir. 1994); Ravindran v. INS, 976 F.2d 754, 761 (1st Cir. 1992); Rivera-Zurita v. INS, 946 F.2d 118, 120 n.2 (10th Cir. 1991); Athehortua-Vanegas v. INS, 876 F.2d 238, 240 (1st Cir. 1989); Vargas v. INS, 831 F.2d 906, 907-08 (9th Cir. 1987); Bak v. INS, 682 F.2d 441, 442-43 (3d Cir. 1982). But see Rafeedie v. INS, 880 F.2d 506, 526 (D.C. Cir. 1989) (Ruth Bader Ginsburg, J., concurring).

not resolved by the BIA until after Sousa's appeal had been decided. See In re Truong, Int. Dec. 3416 (BIA 1999). However this may be, the Supreme Court has said that merely because the agency has previously rejected an argument is no basis for failing to make the claim in one's own case.

> It is urged in this case that the Commission had a predetermined policy on this subject which would have required it to overrule the objection if made. While this may well be true, the Commission is obliged to deal with a large number of like cases. Repetition of the objection in them might lead to a change of policy, or, if it did not, the Commission would at least be put on notice of the accumulating risk of wholesale reversals being incurred by its persistence. Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.

United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37 (1952); accord Marine Mammal Conservancy, Inc. v. Department of Agriculture, 134 F.3d 409, 413 (D.C. Cir. 1998).

In all events, we think it is unnecessary in this case to decide whether, in a case that threatened a miscarriage of justice, we could forgive the failure to raise a clearly meritorious claim in the removal proceedings. Here, there is no miscarriage of justice or anything close to it; instead, Sousa's

claim on the merits, although perhaps ingenious, is mistaken. The issue whether Sousa is properly classified as an aggravated felon is one of statutory construction and is likely to recur, and we prefer to decide it squarely.

To understand the merits, a brief chronology is useful. In the Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, 102 Stat. 4181 ("ADAA"), Congress first defined a class of aggravated felons and made them deportable, limiting this remedy to persons convicted after November 18, 1988. ADAA §§ 7342, 7344 (codified at 8 U.S.C. §§ 1101(a)(43), 1251 note (1988), amended by 8 U.S.C. §§ 1101 note, 1252 note (Supp. II 1996)). Sousa was convicted after 1988 but not of murder, drug trafficking, or trafficking in firearms or destructive devices--the only crimes that were then the basis for aggravated felon status. ADAA § 7342 (codified at 8 U.S.C. § 1101(a)(43) (1988)).

Then, in section 501(a)(3) of the so-called IMMACT statute, Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, which became law on November 29, 1990, Congress expanded the definition of aggravated felony to include crimes of violence, but again Sousa was unaffected on one ground and probably two. IMMACT § 501(a)(3) (codified at 8 U.S.C. 1101(a)(43)(F) (1994) (amended by 8 U.S.C. § 1101(a)(43)(F)

(Supp. II 1996)). The new definition applied only to crimes committed on or after November 29, 1990, IMMACT § 501(b) (codified at 8 U.S.C. § 1101 note (1994))--and Sousa's occurred before that date. In addition, the definition required a sentence of "at least" 5 years, id. § 501(a)(3) (codified at 8 U.S.C. § 1101(a)(43)(F) (1994))--it is not clear that Sousa's 3 to 5 year sentence would satisfy this test.

The difficulty for Sousa is that on September 30, 1996, IIRIRA became law. IIRIRA expanded the definition of aggravated felony with respect to crimes of violence by including aliens with sentences of one year or more. IIRIRA § 321(a)(3) (codified at 8 U.S.C. § 1101(a)(43)).[4] Separately, IIRIRA provided that this new definition applied to convictions entered before, on, or after IIRIRA's enactment. IIRIRA § 321(b) (codified at 8 U.S.C. § 1101(a)(43)). Further, the statute said that this new definition was to apply to all "actions," e.g., removal orders, taken after IIRIRA's enactment. IIRIRA § 321(c) (codified at 8 U.S.C. § 1101 note); Choeum v. INS, 129 F.3d 29, 37 (1st Cir. 1997). Sousa's removal proceeding did not even begin until after IIRIRA's enactment.

---

[4]This covers Sousa's 3 to 5 year sentence. The fact that Sousa's sentence was initially suspended does not matter, 8 U.S.C. § 1101(a)(48)(B); United States v. Banda-Zamora, 178 F.3d 728, 730 (5th Cir. 1999); and, of course, ultimately the suspension was revoked.

Nevertheless, Sousa argues on two different grounds that he is not removable as an aggravated felon. Sousa’s first argument rests on a claim, on which the circuits are divided, as to whether and how IMMACT’s pertinent changes in 1990 alter the original 1988 Anti-Drug Abuse Act provisions. Compare Lettman v. Reno, 207 F.3d 1368, 1371-72 (11th Cir. 2000) and Lewis v. INS, 194 F.3d 539, 546 (4th Cir. 1999), with Bell, 218 F.3d at 93-96. How these two statutes interact is, however, irrelevant in the present case: Sousa is an aggravated felon under IIRIRA’s more recent definition adopted in 1996, which (as already noted) expressly rejects temporal limitations and applies to all actions taken after its enactment.

Sousa’s second effort to avoid the aggravated felon label does make an attempt to avoid IIRIRA's application. In substance, Sousa argues that while IIRIRA's expanded definition of aggravated felon is expressly made applicable to convictions regardless of when they were entered, the statutory section that makes aggravated felons removable does not contain any such provision for "retroactive" application. Literally this is so but it is hard to see why this matters since (as already noted)

a provision for removal of aggravated felons has been on the books since 1988, well before Sousa committed his offense.[5]

In all events, when Congress in IIRIRA enlarged the definition of aggravated felony and made it explicitly applicable to convictions regardless of when they were entered, Congress made perfectly clear its intent that aliens in this enlarged class should now be subject to removal. The removal provision necessarily adopted the enlarged definition, including its rejection of any temporal limitation based on the date of conviction. Here, no ambiguity exists about Congress's intent of the kind that has led to so much litigation about the retroactive application of restrictions on waivers. See, e.g., Wallace v. Reno, 194 F.3d 279, 285-87 (1st Cir. 1999).

True, in the original Anti-Drug Abuse Act, Congress adopted a definition of aggravated felony without including in the definition any temporal limitation, ADAA § 7342 (codified at 8 U.S.C. § 1101(a)(43) (1988)), and thus, in determining whether deportation or other immigration consequences could be based on

[5]The present removal provision says that "[any] alien who is convicted of an aggravated felony at any time after admission" is removable, INA § 237(a)(2)(A)(iii) (codified at 8 U.S.C. § 1227(a)(2)(A)(iii)); but this provision is scarcely different than the original 1988 language. Compare ADAA § 7344(a)(2) (codified at 8 U.S.C. § 1251(a) (1988)) ("[a]ny alien . . . shall . . . be deported who . . . is convicted of an aggravated felony at any time after entry."). The critical change is in the successive enlargements of the definition.

convictions entered prior to the statute, the courts necessarily looked to see whether those sections themselves gave any indication of Congressional intent. They did: Congress explicitly provided that only aliens convicted on or after the ADAA's enactment would be deportable as aggravated felons. ADAA § 7344(b) (codified at 8 U.S.C. § 1251 note (1988)). See, e.g., United States v. Baca-Valenzuela, 118 F.3d 1223, 1228-29 & n.12 (8th Cir. 1997); Scheidemann v. INS, 83 F.3d 1517, 1524 (3d Cir. 1996).

To this extent Sousa is right in saying that a distinction could be drawn, in looking at retroactivity, between a definitional section and an operational one. But the distinction made sense under the Anti-Drug Abuse Act because Congress had not made clear in the original definition any intent as to retroactive effect vel non. By contrast, in IIRIRA, Congress made quite clear its intent to apply the enlarged definition retroactively and this explicit provision makes sense only if Congress also intended that this enlarged definition trigger removal, regardless of when the crime occurred. Congress was interested in results, not labels. Whether or not one likes the result, the decision was one for Congress.

Finally, Sousa says that even if he is removable as an aggravated felon, the immigration judge and BIA erred in refusing to consider granting Sousa relief from deportation. "Relief" in this context refers to the Attorney General's discretionary authority, which has been explicitly granted (and recently restricted) by Congress, to permit one otherwise removable to remain in this country. See note 1, above. Whether such relief might or might not be available to Sousa depends on how one interprets these successive relief statutes and the retroactivity issues associated with them.

However, the case before us is a proceeding to review an order of removal. As already noted, INA section 242(a)(2)(C) precludes our review of any final order of removal by an alien removable because he is an aggravated felon. We have authority to determine whether Sousa falls in this category and have concluded that he does, whether the issue is resolved against him because he failed to exhaust administrative remedies or on the merits. But having determined that he is removable as an aggravated felon, our authority to act in this case with respect to the removal proceeding, including incidental rulings on discretionary relief, is at an end.

This is the view of the other circuits that have addressed this issue.[6] It is reinforced by broad language in INA section 242(b)(9) (codified at 8 U.S.C. § 1252(b)(9)) which provides that judicial review of all issues of law and fact "arising from any action taken or proceeding brought to remove an alien" is available "only in judicial review of a final order under [INA section 242]," the source of our jurisdiction in this case. With respect to the agency's refusal to consider granting Sousa's waiver, Sousa may seek habeas relief in the district court, Mahadeo v. Reno, No. 99-1687, 2000 WL 1257273, at *4 (1st Cir. Sept. 11, 2000), but we express no opinion as to any specific claim as to waiver that he may make in such a proceeding.

The petition for review is denied insofar as it challenges the order of removal on the ground that Sousa is not an aggravated felon; and insofar as the petition challenges the refusal to consider Sousa's request for relief from removal, the petition is dismissed for lack of jurisdiction.

---

[6]Flores-Miramontes v. INS, 212 F.3d 1133, 1135-36 (9th Cir. 2000); Liang v. INS, 206 F.3d 308, 323 (3d Cir. 2000). The Eleventh Circuit pointed out in Richardson v. Reno, 180 F.3d 1311, 1315 (11th Cir. 1999), cert. denied, 120 S. Ct. 1529 (2000), that an alien can always challenge whether the limitations on judicial review in section 1252 are themselves constitutional in a given case, but no such challenge is presented here.

It is so ordered.