Kelly SAINT FORT

v.

John ASHCROFT, Attorney General, et al.,

No. CIV.A.02–11291–RGS.

United States District Court, D. Massachusetts.

Sept. 30, 2002.

Allan M. Tow, Boston, MA, for Kelly Saint Fort, Plaintiff.

Frank Crowley, Immigration & Naturalization, Special Assistant U.S. Attorney, Boston, MA, for John Ashcroft, Attorney General, James Zigler, Steven J. Farquharson, Defendants.

### MEMORANDUM AND ORDER ON PETITIONER'S MOTION FOR WRIT OF HABEAS CORPUS

STEARNS, District Judge.

On August 1, 2002, the court stayed petitioner Kelly Saint Fort's removal and directed the respondent Attorney General to file an opposition to his petition for writ of habeas corpus. On September 11, 2002, the respondent moved to dismiss the petition on grounds that Saint Fort had failed to exhaust his administrative remedies. On September 23, 2002, Saint Fort filed his opposition to the motion to dismiss. Having considered the pleadings, and the relevant decisions of the immigration courts, this court rules as follows.

Petitioner is a twenty-six year old citizen of Haiti who immigrated legally with his family to the United States at age twelve. In 1999, Saint Fort was convicted of second degree assault and receiving stolen

property. He was sentenced to concurrent prison terms of two to four years. As both crimes met the statutory definition of an aggravated felony, Saint Fort was found by an Immigration Judge (IJ) to be subject to removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). The IJ, however, also determined that if Saint Fort were to be returned to Haiti, he would "more likely [than not] be imprisoned as a criminal from the United States and be detained and placed in prison, and be tortured." IJ Oral Decision of Nov. 6, 2001, at 4. The IJ therefore found Saint Fort eligible for a deferral under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85(CAT).[1] As is apparent from his oral ruling, the IJ based his finding on State Department Human Rights Reports, a prior decision of the Board of Immigration Appeals (BIA),[2] and Saint Fort's testimony, which the IJ deemed credible.

The Attorney General appealed, and the BIA reversed the IJ's decision. The BIA cited an intervening decision, *In Re J–E–*, 23 I. & N. Dec. 291 (BIA 2002), holding that "substandard prison conditions in Haiti do not constitute torture within the meaning of 8 C.F.R. § 208.18(a) where there is no evidence that the authorities intentionally and deliberately detain deportees in order to inflict torture." The BIA then summarily concluded that Saint Fort had presented no evidence that he would be tortured if returned to Haiti.

## DISCUSSION

■ The Attorney General's principal argument is that this court lacks jurisdiction to hear the petition because Saint Fort had failed to exhaust his administrative remedies as required by 8 U.S.C. § 1252(d)(1). The statutory exhaustion requirement is jurisdictional, as the Attorney General contends. *See Athehortua–Vanegas v. I.N.S.*, 876 F.2d 238, 240 (1st Cir. 1989); *Sousa v. I.N.S.*, 226 F.3d 28, 31 (1st Cir.2000). The question remains, however, whether the unexhausted remedies identified by the Attorney General that were available to Saint Fort—a motion to reopen his case before the BIA, or a motion to reconsider[3]—trigger this jurisdictional bar. The remedies required to be exhausted are those that in the plain language of § 1252(d) are available to an alien "as of right." A motion to reconsider would not seem to fall into the category of a remedy of right as it need not be considered by the court on its merits. *See Luis v. I.N.S.*, 196 F.3d 36, 41 (1st Cir.1999).

■ The suggested motion to reopen presents a closer question. The motion to reopen is intended to avoid a harsh application of the statutory exhaustion rule when an alien fails to raise an issue before the BIA through no fault of his own, either because of a structural error in the BIA proceedings themselves or because of an unforeseeable change in circumstances. *See Bernal–Vallejo v. I.N.S.*, 195 F.3d 56, 64 (1st Cir.1999) (ineffective assistance on the part of counsel before the BIA). It follows that the BIA will entertain a motion to reopen only if the "evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 3.2(c)(1). A second exception to

---

1. The CAT became binding on the United States on November 20, 1994, after ratification by the Senate with certain reservations. Legislation implementing Article 3 of the CAT was signed by the President on October 21, 1998.

2. *See In Re Perez*, File No. A40 134 840 (BIA, Oct. 22, 2001).

3. Saint Fort did file a motion to reconsider with the BIA, but did so in an untimely manner.

the exhaustion rule applies when the relief sought is beyond the competence of the BIA to grant, as is the case with claims of a denial of due process or some other constitutional right. *Bernal–Vallejo,* 195 F.3d at 64.

Saint Fort, as he readily concedes, has no new, previously undiscoverable evidence to offer to the BIA and that a motion to reopen on that basis would be futile. He seeks rather to avoid the exhaustion rule by claiming that the BIA violated his constitutional right to due process by applying the *In Re J–E–* decision retroactively to his case. In so doing, Saint Fort claims that the BIA established "new standards both evidentiary and legal in nature" to his detriment, contrary to its own policy and precedents.

In the struggle to fit within this exception, however, Saint Fort misconstrues the BIA's decision. The BIA did not, as petitioner alleges, hold that *In Re J–E–* had a preclusive effect on the merits of his appeal. It rather held that substandard prison conditions in and of themselves do not qualify as "torture" within the meaning of Article 3 of the CAT, and that therefore, to qualify for a CAT deferral (non-refoulement), an alien seeking protection under the treaty must show either that he is personally at risk of torture or that an official policy of mistreating criminal retur-

nees is so pervasive that it is probable that he will on his arrival be detained and tortured. 2002 WL 481156, 23 I. & N. Dec. at 303–304.

While the parties debate at length the propriety of the "retroactive" application of *In Re J–E–* to Saint Fort's appeal, the discussion is somewhat besides the point. Inherent in the concept of retroactivity is the idea of a fundamental change in settled rules that attaches new legal consequences to completed events. *Landgraf v. USI Film Products,* 511 U.S. 244, 270, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). While the concept is most often discussed in the context of statutory enactments that burden (or unburden) private rights, it has equal applicability to court decisions having the same effect. But that is not the case here. In Re J–E– announces no new evidentiary rule. It merely holds that the alien in that case had failed to meet his burden of showing that it was more likely than not that he would be tortured if returned to Haiti, the burden of proof applied immemorially in deportation cases.[4] 2002 WL 481156, 23 I. & N. Dec. at 302.

This does not, however, end the matter. The BIA went on to hold that Saint Fort had offered *no* evidence to the IJ that he would be tortured if he were to be deport-

---

4. The majority and the dissenting members agreed that proof by a preponderance of the evidence was a standard "familiar ... to immigration authorities and reviewing courts," *INS v. Stevic,* 467 U.S. 407, 430, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984), and therefore the appropriate standard to apply in the CAT context. *See also* 8 C.F.R. § 208.16(c)(2). It is true, as petitioner points out, that one of the dissenting members accuses the majority of reading a "specific intent" requirement into the burden of proof, that is; a requirement that the alien prove that "the prospective torture he may face will result from the torturer's specific intent to torture him." 2002 WL 481156, 23 I. & N. Dec. at 316.

The accusation is, however, based on a contextual distortion of the majority opinion, which in defining the meaning of "torture," as that term is used in the CAT, refers to a specific intent to inflict severe pain or suffering as one of the elements distinguishing torture from "rough and deplorable treatment, such as police brutality," which the Senate in ratifying the CAT made clear was not to be deemed as torture. The majority's factual analysis of the evidence presented in *In Re J–E–* hews to the conventional burden of proof. I do not read the opinion to impose any burden on an alien to prove the subjective state of mind of his putative torturer, as the dissent (and petitioner) claim.

ed to Haiti. This holding simply cannot be squared with the findings of the IJ whose decision was based not only on the documentary evidence offered by Saint Fort (presumably the same evidence offered in *In Re J–E–*) but also on Saint Fort's credible testimony. *See In Re J–E–*, 2002 WL 481156, 23 I. & N. Dec. at 302 ("The respondent's testimony, if credible, may be sufficient to sustain the burden of proof without corroboration"). It may be that the BIA did not have before it (as this court does not), the exhibits or a transcript of the testimony on which the IJ relied, and may therefore have erroneously concluded that Saint Fort had presented nothing whatsoever on the issue, or it is possible that the BIA may have considered that evidence and determined that it was insufficient as a matter of law to satisfy petitioner's burden. Given the conclusory nature of the BIA's decision, it is impossible to tell.

### ORDER

For the foregoing reasons, the case will be *REMANDED* to the BIA for a clarification of the grounds of its denial of Saint Fort's appeal. The stay of removal will remain in effect pending receipt by the court of the BIA's response.

SO ORDERED.