# United States Court of Appeals
## For the First Circuit

No. 03-1802

CONSTANTINE E.O. SAYYAH,

Petitioner, Appellant,

v.

STEPHEN J. FARQUHARSON; FREDERICK B. MCDONALD,
SHERIFF, FRANKLIN COUNTY HOUSE OF CORRECTION,

Respondents, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Howard, Circuit Judge,
Coffin and Campbell, Senior Circuit Judges.

Myles Jacobson for appellant.
Lyle D. Jentzer, Attorney, Office of Immigration Litigation,
Civil Division, Department of Justice, with whom Peter D. Keisler,
Assistant Attorney General, and Christopher C. Fuller, Senior
Litigation Counsel, were on brief for appellees.

August 30, 2004

**CAMPBELL**, <u>**Senior Circuit Judge**</u>.  This appeal from the district court's dismissal of a petition for habeas corpus questions whether 8 U.S.C. § 1252(d) -- which bars court review of a final order of removal unless the alien has exhausted all administrative remedies as of right -- applies to such petitions. The district court held that it does and we agree.

## I.  Background

The facts are not in dispute.  Appellant, Constantine E.O. Sayyah, an Iranian national, was detained by the Immigration and Naturalization Service ("INS") on March 18, 1999 after having illegally entered the United States from Canada, where he had been living in temporary asylum.  The Canadian government subsequently denied his application for permanent asylum and refused to permit him to return to Canada.  The INS began removal proceedings.  On November 30, 1999, Sayyah filed an asylum application with the Boston Immigration Court.  On June 19, 2000, Sayyah appeared without counsel before Immigration Judge Ragno.  After a hearing, Judge Ragno determined that Sayyah was in the United States illegally and ordered him removed as soon as a country could be found that would receive him.  Until removal, he was to remain in custody.  Based on statements made by Sayyah at the hearing, Judge Ragno ruled that Sayyah had waived his applications for asylum, protection under the Convention Against Torture, and stay of removal, and that he had consented to removal and waived his right

to appeal to the Board of Immigration Appeals ("BIA"). Sayyah subsequently complained that his waivers and consent to deportation were prompted by Judge Ragno's rude and abusive treatment at the hearing.

On February 21, 2001, Sayyah filed a pro se petition for habeas corpus in the United States District Court for the District of Massachusetts. In it, he asserted, inter alia, that Judge Ragno had behaved in a biased and abusive manner, depriving Sayyah of his right to due process of law.[1] On June 1, 2001, counsel was appointed for Sayyah. On June 12, 2001, Sayyah was released from detention following the Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678 (2001) (detention of an alien following final order of removal allowed only for such time as is reasonably necessary to secure the alien's removal).

Sayyah's release did not last long. On November 1, 2001, Sayyah was reincarcerated for, among other reasons, getting angry with his deportation officer and stating, in effect, that people become terrorists when very angry and that he was very angry. Again, he was to remain in custody pending removal.

In response to Sayyah's habeas corpus petition, the INS, on July 3, 2002, moved to have Sayyah's claims reopened with his original immigration judge, Judge Ragno, for the purpose of

---

[1]He also claimed indefinite detention, but this claim was mooted by his subsequent release.

-3-

allowing him an opportunity to appeal to the BIA Judge Ragno's earlier decision. Sayyah refused to join in this motion.

On July 19, 2002, Sayyah filed in the district court a memorandum and an emergency motion for hearing and order of release, arguing that the reopening of his case should not be allowed to moot the claims set forth in his habeas corpus petition. Sayyah further insisted that his detention violated Zadvydas and INS rules because it exceeded the presumptive six-month period of reasonable detention allowed for the process of removal.

On July 22, 2002, Judge Ragno allowed the government's motion and, on August 20, 2002, reinstated his prior order directing Sayyah's removal. Judge Ragno's new order provided Sayyah a full right to appeal from any alleged denial of due process by Judge Ragno. Purportedly because he feared being before Judge Ragno again, however, Sayyah did not appeal to the BIA. Instead, he chose to pursue the habeas petition he had filed in the district court.

Meanwhile, on August 19, 2002, the district court held a hearing on Sayyah's emergency motion for hearing and order of release. On August 28, 2002, the district court denied the motion, but without prejudice.

On October 28, 2002, the INS Headquarters Post Detention Unit determined that Sayyah might be released on an order of supervision upon the posting of $5,000 bond. Sayyah was not able

-4-

to raise enough money to post the bond and remained in custody until, after negotiation over the amount of the bond, he was released in January of 2003 pending removal.

On November 26, 2002, appellees, Steven J. Farquharson of the INS and Frederick B. McDonald of the Franklin County House of Correction, filed a motion to dismiss the portion of Sayyah's habeas corpus petition pertaining to his assertion that he had been denied due process. In the motion, appellees argued that under section 242(d) of the Immigration and Nationality Act, 8 U.S.C. § 1252(d),[2] the district court lacked jurisdiction over the portion of Sayyah's habeas corpus petition containing the due process claim because Sayyah had failed to exhaust all administrative remedies available to him as of right. On April 17, 2003, the district court agreed that it lacked jurisdiction over the claim and granted the motion to dismiss. It further concluded that since Sayyah's remaining habeas corpus claim was mooted by his release, the petition should be dismissed, and it closed the case.[3] Now, Sayyah appeals to this court.

---

[2]The section was enacted under the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009-546 (1996).

[3]Sayyah does not appeal from the district court's determination that the remaining claim in his petition is moot.

## II. Discussion

As the issues presented are purely legal, we review them de novo. Wallace v. Reno, 194 F.3d 279, 280-81 (1st Cir. 1999).

Sayyah argues that the district court erred when it applied 8 U.S.C. § 1252(d) to this habeas corpus case and concluded that section 1252(d) deprived the district court of jurisdiction to review his due process claim. Section 1252(d) states:

> Review of final orders. A court may review a final order of removal only if--
> (1) the alien has exhausted all administrative remedies available to the alien as of right, and
> (2) another court has not decided the validity of the order, unless the reviewing court finds that the petition presents grounds that could not have been presented in the prior judicial proceeding or that the remedy provided by the prior proceeding was inadequate or ineffective to test the validity of the order.

The exhaustion bar contained in subsection (d)(1) is jurisdictional. See Sousa v. INS, 226 F.3d 28, 31-32 (1st Cir. 2000).

### A. Whether Section 1252(d)(1) Applies to Habeas Corpus

Sayyah argues that section 1252(d)(1)'s exhaustion requirement does not apply to habeas corpus petitions. He notes that section 1252(d) requires exhaustion as a predicate to "court" review of a final order of removal but not specifically as a predicate to habeas corpus. He contrasts the statute's lack of mention of habeas corpus with § 1252(c)'s explicit reference to

-6-

"[a] petition for review <u>or habeas corpus</u> of an order" (emphasis added).[4]

We find Sayyah's argument unpersuasive. Six other circuits have read section 1252(d)(1)'s exhaustion requirement, or that of its predecessor, section 1105a(c), as being applicable to habeas corpus petitions. <u>Sun</u> v. <u>Ashcroft</u>, 370 F.3d 932, 936-44 (9th Cir. 2004); <u>Theodoropoulos</u> v. <u>INS</u>, 358 F.3d 162, 169-74 (2d Cir. 2004), <u>superseding</u> 313 F.3d 732 (2d Cir. 2002); <u>Duvall</u> v. <u>Elwood</u>, 336 F.3d 228, 231-32 (3d Cir. 2003); <u>Sundar</u> v. <u>INS</u>, 328 F.3d 1320, 1324-26 (11th Cir.), <u>cert. denied</u>, 124 S. Ct. 531 (2003); <u>Kurfees</u> v. <u>INS</u>, 275 F.3d 332, 336-37 (4th Cir. 2001) (holding that section 1105a(c) applies to habeas corpus petitions); <u>Goonsuwan</u> v. <u>Ashcroft</u>, 252 F.3d 383, 385-90 (5th Cir. 2001) (same).

Sayyah bases much of his contrary argument on language in <u>INS</u> v. <u>St. Cyr</u>, 533 U.S. 289 (2001) -- a case in which the Supreme Court held that a different subsection of 8 U.S.C. § 1252, namely subsection (a)(2)(C) ("[N]o court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense . . . ."), does not

---

[4]Section 1252(c) states:
Requirements for petition. A petition for review or habeas corpus of an order of removal--
(1) shall attach a copy of such order, and
(2) shall state whether a court has upheld the validity of the order, and, if so, shall state the name of the court, the date of the court's ruling, and the kind of proceeding.

eliminate habeas jurisdiction over petitions by such aliens. <u>See also</u> <u>Mahadeo</u> v. <u>Reno</u>, 226 F.3d 3, 11 (1st Cir. 2000).[5] In <u>St. Cyr</u>, the Court stated that "[f]or the INS to prevail it must overcome both the strong presumption in favor of judicial review of administrative action and the longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction." 533 U.S. at 298 (citing <u>Ex Parte Yerger</u>, 75 U.S. 85 (1868); <u>Felker</u> v. <u>Turpin</u>, 518 U.S. 651 (1996)) (footnotes and parentheticals omitted). In the circumstance of a statute purporting to exclude any and all right of judicial review, the Court found the absence of any specific reference to habeas corpus to be particularly significant.

<u>St. Cyr</u> is not analogous to this case, however. Section 1252(d), the statute here at issue, does not purport to eliminate judicial review. Rather, it premises judicial review upon the prior exhaustion of administrative remedies. In so doing, section 1252(d) implements a principle almost universally recognized in our

_____

[5]Besides citing <u>St. Cyr</u>, Sayyah cites <u>Ruckbi</u> v. <u>INS</u> and <u>Sousa</u>. They do not advance his cause. The former is not germane to whether section 1252(d)'s exhaustion requirement applies to habeas corpus petitions; it did not concern exhaustion or habeas corpus and, instead, concerned a statute under the IIRIRA transitional rules that barred direct review when an alien was deportable for having committed certain criminal offenses. <u>See</u> <u>INS</u> v. <u>Ruckbi</u>, 159 F.3d 18, 21 (1st Cir. 1998). The latter indicates merely that there may be exceptions to the application of a statutory exhaustion requirement. <u>Sousa</u>, 226 F.3d at 32. It does not suggest that section 1252(d) is not generally applicable to habeas corpus petitions.

jurisprudence.  See, e.g., Ex parte Hawk, 321 U.S. 114, 116-17 (1944) (per curiam) (discussing common law exhaustion).

In St. Cyr, on the other hand, an interpretation of section 1252(a)(2)(C) eliminating habeas corpus jurisdiction would have invoked "the outer limits of Congress' power,"  533 U.S. at 299; see also id. at 314 ("If it were clear that the question of law could be answered in another judicial forum, it might be permissible to accept the INS' reading of § 1252.  But the absence of such a forum, coupled with the lack of a clear, unambiguous, and express statement of congressional intent to preclude judicial consideration on habeas of such an important question of law, strongly counsels against adopting a construction that would raise serious constitutional questions.") (citations and footnotes omitted).  The Eleventh Circuit has highlighted this important distinction, commenting:

> The exhaustion requirement of § 1252(d)(1) is not tantamount to a complete preclusion of jurisdiction.  Telling a petitioner that he must seek the remedy for an error before an administrative agency or another court prior to seeking it in a habeas proceeding is not the same thing as telling him that he may not pursue the remedy in a federal habeas proceeding in any event.  Compelling a petitioner to seek review of an immigration order in the BIA before he can seek to have it set aside in a habeas proceeding is different from barring all habeas review of the order regardless of exhaustion.  The difference is that between a reasonable condition precedent and an unconditional preclusion.

Sundar, 328 F.3d at 1324.

We note, moreover, that subsection (2) of section 1252(d) contains language intimating the likely inclusion of habeas review in section 1252(d). Subsection (2) provides that a court may "review" a final order of removal only if:

> another court has not decided the validity of the order, unless the reviewing court finds that the petition presents grounds that could not have been presented in the prior judicial proceeding or that the remedy provided by the prior proceeding was inadequate or ineffective to test the validity of the order.

This reference to another court and a prior judicial proceeding suggests that Congress envisaged the term "review" to encompass habeas corpus review, which commonly follows upon other judicial proceedings. Sun, 370 F.3d at 940; Theodoropoulos, 358 F.3d at 169-72 (stating, "[m]oreover, although § 1252(d) fails to expressly mention habeas corpus or § 2241 (as required by [St. Cyr] to effect a repeal of habeas jurisdiction), its recitation in subsection (2) of the effect that prior judicial proceedings have on the scope of a subsequent court's review seems plainly to contemplate habeas review.") (footnote omitted).

The legislative history of section 1252(d), while not explicit, is also entirely consistent with the inclusion of habeas corpus review. Through the enactment of the IIRIRA, section 1252(d) replaced 8 U.S.C. § 1105a(c), which provided that "[a]n order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies

available to him as a matter of right under the immigration law and regulations . . . ." As section 1252(d) merely "restates" section 1105a(c), cases concerning the latter remain relevant. Sousa, 226 F.3d at 31; see also Sun, 370 F.3d at 937 ("[W]e thus have no indication in the statute itself that Congress intended through IIRIRA's enactment of § 1252(d)(1) to remove the exhaustion requirement for habeas petitions that we had previously decided was contained in the very similar language of former § 1105a(c)."); Duvall, 336 F.3d at 232 n.6 ("The [scant] legislative history that does exist strongly suggests that the purpose of the two provisions is one and the same."). Nothing in the legislative background nor in cases construing the earlier section 1105a(c) lends support to Sayyah's interpretation.

In this circuit's case of Hernandez v. Reno, 238 F.3d 50, 54-55 (1st Cir. 2001), the government argued that the exhaustion requirement of section 1105a(c) barred review of Hernandez's habeas corpus petition, which challenged the competency of his counsel. We ultimately concluded from the particular facts in that case that the exhaustion requirement did not bar Hernandez's petition. Id. Hernandez faced immediate deportation notwithstanding the pendency before the BIA of his motion to reopen, and his failure to timely exhaust may have been caused by the very incompetency he complained of. Id. We did not hold that section 1105a(c)'s exhaustion requirement was generally inapplicable to habeas corpus petitions.

-11-

To the contrary, we stated, "[i]n the ordinary case, we agree that the respondent must use the Board's own procedures to resolve his competency of counsel claims. Absent a threat of immediate deportation, a district court should in general decline to entertain a habeas petition challenging competency of counsel." Id. at 55 (citation omitted).

We conclude that section 1252(d)'s exhaustion requirement applies generally to habeas corpus petitions. To hold otherwise would drastically limit the utilization of a salutary principle customarily applied in respect to administrative proceedings. Such an interpretation would allow an alien subjected to an adverse decision to reject the very administrative review processes established to correct mistakes and to insist, instead, upon immediate access to a federal court.

Accordingly, we hold that section 1252(d)'s exhaustion requirement applies broadly to all forms of court review of final orders of removal, including habeas corpus.[6] We now turn to

_____

[6]It might be argued that our holding results in giving to the term "review" different meanings within the same statute. Compare St. Cyr, 533 U.S. at 312-14 (reading "review" in section 1252(a)(2)(C) to mean only direct appeals); see also Theodoropoulos, 358 F.3d at 171. "It is a fundamental interpretive principle that identical words or terms used in different parts of the same act are intended to have the same meaning." United States v. Nippon Paper Indus. Co., Ltd., 109 F.3d 1, 4 (1st Cir. 1997) (citations omitted). Assuming, without deciding, that this principle would be applicable to the instant codification, it is not absolute -- rather, it creates a flexible presumption. See United States v. Cleveland Indians Baseball Co., 532 U.S. 200, 213 (2001) (stating, "the presumption 'is not rigid,' and 'the meaning

whether the exhaustion requirement bars review of Sayyah's habeas corpus petition.

## B.  Whether Sayyah's Habeas Corpus Petition Falls Within the Scope of Section 1252(d)(1)

According to section 1252(d)(1), we may review Sayyah's final order of removal -- and therefore the due process claim in his habeas corpus petition which requests review of that order[7] -- only if Sayyah has exhausted all administrative remedies available to him as of right.  Sayyah argues that he has exhausted his administrative remedies because, at the time he filed his habeas corpus petition, he had waived his right to appeal to the BIA.  He contends that this waiver foreclosed his ability to pursue any remedy as of right.  We disagree.

Sayyah's waiver of his right to appeal to the BIA does not constitute exhaustion of the administrative remedies available to him as of right under section 1252(d).  <u>See, e.g.,</u> <u>Theodoropoulos</u>, 358 F.3d at 174 (holding alien's waiver of right to appeal to BIA was a failure to exhaust administrative remedies for

_____

[of the same words] well may vary to meet the purposes of the law,'") (quotations omitted).  Because of the fundamental difference between the provision in this case, pertaining to exhaustion only, and the provision interpreted in <u>St. Cyr</u>, eliminating review entirely, it would be only reasonable to forgo the presumption.  As discussed <u>supra</u>, the reading of "review" advanced in <u>St. Cyr</u> was, itself, the product of a presumption, but one that does not apply to cases like the present.

[7]There is no dispute that this claim requests review of his final order of removal.

jurisdictional purposes). Sayyah argues that his waiver here was the product of Judge Ragno's oppressive and improper behavior. But after the hearing at which the behavior criticized was exhibited, Sayyah was later granted an additional opportunity to appeal to the BIA. Sayyah's purported fear that an appeal would force him to appear once more before Judge Ragno was an insufficient excuse not to comply with the exhaustion requirement. His appeal would have been to the BIA, not to Judge Ragno. The BIA had the authority to deal with Sayyah's objections to the events in Judge Ragno's courtroom and provide relief, which might or might not have included further hearings before Judge Ragno. See Ravindran v. INS, 976 F.2d 754, 763 (1st Cir. 1992) (listing "judicial conduct" among "irregularities" that BIA could have corrected if brought to its attention); cf. Podio v. INS, 153 F.3d 506, 511 (7th Cir. 1998) (remanding to BIA case concerning alleged immigration judge misconduct and stating, "[w]hile the choice of a presiding judge is left to the discretion of the BIA, we believe that all of the parties concerned, including the original immigration judge himself, would prefer that the new hearing be held before a different judge").

Sayyah further contends that since his case was reopened only after petition by the INS, any remedy available to him was discretionary and not "as of right." See 8 U.S.C. § 1252(d)(1). We disagree. Upon reopening of his case, Sayyah was given the

opportunity to directly appeal to the BIA as of right. See 8 C.F.R. § 1003.3; Hernandez, 238 F.3d at 54 (stating that timely appeal to the BIA is a remedy as of right). Moreover, the distinction Sayyah seeks to make on these facts between discretionary remedies and remedies as of right is somewhat illusory. In Hernandez, we discussed the fact that an untimely motion to reopen is a discretionary motion but that, to the extent the BIA grants such "currently available remedies as a matter of grace," courts may require exhaustion of them. See 238 F.3d at 54-55. We conclude that Sayyah did not exhaust the administrative remedies available to him as of right under section 1252(d)(1).

### C. Whether Sayyah's Habeas Corpus Petition Falls within the Exceptions to Section 1252(d)(1)

The exhaustion principle, while strict, admits of appropriate exceptions in extraordinary instances. See Sun, 370 F.3d at 943 n.16 (citing Theodoropoulos, 358 F.3d at 173; Goonsuwan, 252 F.3d at 389; Sousa, 226 F.3d at 32[8]) ("There is

---

[8]In Sousa, we discussed one such exception: "[t]he best founded is one suggested by the Supreme Court, and explicitly recognized in this and other circuits, where a resort to the agency would be futile because the challenge is one that the agency has no power to resolve in the applicant's favor." See 226 F.3d at 32. Sayyah does not appear to argue in his brief that this exception applies here. Regardless, the contested claim raised issues that were well within the purview of the BIA -- namely, whether Judge Ragno's conduct prevented Sayyah from having a fair opportunity to defend himself, to pursue his petitions for asylum, withholding of deportation and relief under the Convention Against Torture, and to timely appeal to the BIA. See Ravindran, 976 F.2d at 763. Accordingly, the Board was capable of resolving these issues in his favor, and this exception does not apply.

-15-

agreement among the circuits that have addressed the issue that exceptions do apply to § 1252(d)(1), although the contours of such exceptions remain to be fully developed.").

Sayyah contends his case falls within the exception for cases in which prejudice may result from an unreasonable or indefinite timeline for administrative action. See, e.g., McCarthy v. Madigan, 503 U.S. 140, 146-47 (1992) (noting "circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion," including when "requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action . . . for example, from an unreasonable or indefinite timeframe for administrative action") (citations omitted); Simmons v. Reynolds, 898 F.2d 865, 867-68 (2d Cir. 1990) (six-year delay in state appeal excused exhaustion requirement in federal habeas action); Burkett v. Cunningham, 826 F.2d 1208, 1218-19 (3d Cir. 1987) (excusing state prisoner's failure to exhaust state-law remedies before seeking federal habeas corpus relief on ground that he had suffered over five years of delay in attempting to vindicate himself in state court). On this record, however, we are unable to find that pursuing an appeal to the BIA would have resulted in a prejudicial delay.

Sayyah's final order of removal was issued on June 19, 2000. Sayyah was understood to have waived his right to appeal

from the order, thus eliminating further consideration of his claims for asylum, protection under the Convention Against Torture, and stay of removal. Approximately two years later, Sayyah was given another opportunity to appeal to the BIA, but he did not pursue it. It was expressly made clear in that appeal that he could pursue his assertion of a denial of due process by Judge Ragno. Because Sayyah chose not to proceed with the appeal, there was again no reason for further administrative consideration and no reason to blame the agency for delay. Sayyah maintains, however, that, at that time, he was presented information indicating that appeals to the BIA were backlogged some five to eleven years. Bare speculation of this sort, however, is no substitute for proof that Sayyah suffered or would have suffered prejudicial administrative delay. Cf. United States v. Gonzalez-Roque, 301 F.3d 39, 48 n.7 (2d Cir. 2002) (holding, in statutory exhaustion context, that mistaken belief, even if true, "would not excuse [petitioner] from raising" an issue but rather merely "reflect[ed] his conscious decision not to do so"). Sayyah was not, moreover, under continuous detainment during the two-year period between his initial waiver of appeal and the reopening of his case. He was released on June 12, 2001 and returned to further detention only after, among other things, he engaged in angry confrontations with Social Security and deportation personnel. He was again released in 2002.

We hold that section 1252(d)(1) applies, jurisdictionally barring consideration of Sayyah's contested claim for want of exhaustion.  As the statutory exhaustion requirement bars review, we need not consider how Sayyah's habeas corpus petition fares under the common-law exhaustion standard.  See Sousa, 226 F.3d at 31.  We conclude that Sayyah's due process claim was properly dismissed.  **Affirmed.**