Nickenson LOUIS–MARTIN, Petitioner,

v.

Thomas RIDGE, Secretary, Department of Homeland Security,: et al., Respondents.

No. CIV.A. 3:CV–04–0283.

United States District Court, M.D. Pennsylvania.

March 5, 2004.

Nickenson Louis–Martin Lords Valley, PA, pro se.

George R. Barron, Wilkes–Barre, PA, for Petitioner.

Daryl F. Bloom, United States Attorney's Office, Harrisburg, PA, for Respondents.

## *MEMORANDUM*

CAPUTO, District Judge.

Presently before the Court is Petitioner Nickenson Louis–Martin's Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief with Temporary Restraining Order. (Doc. 1.) I find that the Court has jurisdiction to hear this matter under 28 U.S.C. § 2241. I further find that because the Immigration Judge abused his discretion in ruling Petitioner's Convention Against Torture claim was abandoned, Petitioner cannot be removed from the United States. I will vacate the Decision of the Board of Immigration Appeals and remand the matter to the Bureau of Immigration and Customs Enforcement for further proceedings to determine whether Mr. Louis–Martin is eligible for relief under the Convention Against Torture.

## BACKGROUND

Mr. Louis–Martin immigrated to the United States from Haiti with his parents in 1989, and thereafter he acquired permanent residency status. While Mr. Louis–Martin was under eighteen, his mother applied for citizenship. She included Mr. Louis–Martin in her application for citizenship. During the pendency of her application, Mr. Louis–Martin turned eighteen. Mrs. Louis–Martin was naturalized on November 20, 1997. (Doc. 1, Ex. E.)

In May of 2002, the Immigration and Naturalization Service, now known as the Bureau of Immigration and Customs Enforcement, began removal proceedings against Mr. Louis–Martin under two theories: (1) that he was convicted of the aggravated felonies of attempted robbery and attempted criminal possession of a weapon, a violation of INA § 237(a)(2)(A)(iii) (8 U.S.C. § 1227(a)(2)(A)(iii)); and (2) that he was convicted of possession of a firearm, a violation of INA § 237(a)(2)(C) (8 U.S.C. § 1227(a)(2)(C)). At a hearing on December 17, 2002, the Immigration Judge found that Mr. Louis–Martin had been convicted of two aggravated felonies. (Doc. 6.1, Ex. C.) The Immigration Judge also found that Mr. Louis–Martin had been convicted of possession of a firearm. (*Id.*)

During the hearing, Mr. Louis–Martin explained to the Immigration Judge that he should not be removed to Haiti because he would be subjected to death due to his family's former political affiliations. (Doc. 1, Ex. C at 43–44.) The Immigration Judge instructed Mr. Louis–Martin's attorney that in order for the court to consider Mr. Louis–Martin's claim, which invoked the protections of the Convention

Against Torture, he must submit Form I–589. The Immigration Judge warned Mr. Louis–Martin's attorney that if the I–589 was not submitted by January 16, 2003, the court would deem the claim abandoned. (*Id.* at 47–50.)

On January 21, 2003, the Immigration Judge reconvened the hearing. Because Mr. Louis–Martin had not submitted the I–589, the Immigration Judge deemed Mr. Louis–Martin's claim under the Convention Against Torture abandoned. (Doc. 1, Ex. D at 63–64.) During the course of this hearing, the Immigration Judge harshly reprimanded Mr. Louis–Martin's attorney and recommended to Mr. Louis–Martin that he file a complaint with the New York Bar Association. (*Id.* at 66.) The Immigration Judge then ordered Mr. Louis–Martin to be removed from the United States and returned to Haiti. (Doc. 6.1, Ex. D.) The Board of Immigration Appeals affirmed the Immigration Judge's decision without opinion. (Doc. 6.1, Ex. E.)

Mr. Louis–Martin filed a Petition for Writ of Habeas Corpus with the Court in February, 2004. (Doc. 1.) The Court issued a temporary stay of removal pending the outcome of the proceedings. (Doc. 4.) His initial filings were pro se, but Mr. Louis–Martin has since retained counsel. On March 1, 2004, the Court held a hearing on the Petition, at which Mr. Louis–Martin was represented by counsel. The matter is now ripe for disposition.

### LEGAL STANDARD

Pursuant to 28 U.S.C. § 2241, a habeas corpus petition is appropriate to raise an issue that the Bureau of Immigration and Customs Enforcement has violated the Constitution, *see Liang v. INS,* 206 F.3d 308 (3d Cir.2000); *see also Sandoval v. Reno,* 166 F.3d 225 (3d Cir.1999), or that it has violated the statutory law governing immigration. *INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). Because the Board of Immigration Appeals merely adopted the decision of the Immigration Judge, I can review the Immigration Judge's decision. *Najjar v. Ashcroft,* 257 F.3d 1262, 1284 (11th Cir. 2001).

### DISCUSSION

Mr. Louis–Martin raises three separate challenges to the Immigration Judge's decision. First, he contends that he is a citizen of the United States and, therefore, cannot be subject to removal. Second, he contends that he if he is not a citizen, he is a national of the United States. Lastly, he contends that it was and error of law to deem the Convention Against Torture claim abandoned.

### 1) Jurisdiction

District courts have jurisdiction under 28 U.S.C. § 2241 to hear challenges to immigration decisions ordering removal under 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 1227(a)(2)(C). *INS v. St. Cyr,* 533 U.S. 289, 314, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

■ As with all habeas petitions, there is a requirement that the petitioner exhaust all administrative remedies before the Court will hear the matter. *E.g., Duvall v. Elwood,* 336 F.3d 228, 231 (3d Cir. 2003). This requirement is jurisdictional in nature. *Id.* at 233. The government contends that Mr. Louis–Martin has not yet exhausted his administrative remedies because he is still capable of filing a motion to reopen proceedings. However, the exhaustion requirement for habeas petitions of immigration proceedings stems from the statutory restriction upon judicial review of immigration decisions. *Id.* at 232–33. "A court may review a final order of removal only if—(1) the alien has ex-

hausted all administrative remedies available to the alien as of right, . . . ." 8 U.S.C. § 1252(d). A motion to reopen is not a remedy available as a right; it is completely discretionary relief. *See* 8 C.F.R. § 1003.2 (stating that the Board of Immigration Appeals "has discretion to deny a motion to reopen even if the moving party has established a prima facie case for relief."). I find that Mr. Louis–Martin exhausted the necessary administrative remedies.

■ The government also challenges the Court's jurisdiction to determine Mr. Louis–Martin's status as a citizen or a national. The government contends that such challenges can only be heard by the Third Circuit Court of Appeals pursuant to 8 U.S.C. § 1252(b)(5)(C). "The petitioner may have such nationality claim decided only as provided in this paragraph." 8 U.S.C. § 1252(b)(5)(C) (requiring an appeal which is reviewed in the circuit court). A problem which courts have been grappling with for some time now is that 8 U.S.C. § 1252(b)(5)(C) is in contradiction with 8 U.S.C. § 1252(a)(2)(C), which prohibits the circuit courts from reviewing the Board of Immigration Appeals' decisions in certain instances, although it does not affect district courts' jurisdiction to hear habeas petitions. *St. Cyr*, 533 U.S. at 314, 121 S.Ct. 2271; *see also* 8 U.S.C. § 1252(a)(2)(C) ("Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title, . . . .").

The government argues that the language of § 1252(b)(5)(C) is controlling in this case. In support of this proposition,

the government cites *Salim v. Ashcroft*, in which the Court of Appeals for the Third Circuit held that despite § 1252(a)(2)(C)'s prohibition on review of certain removal orders, the circuit court has jurisdiction to determine jurisdictional facts such as nationality and whether a crime is an aggravated felony. 350 F.3d 307, 308 (3d Cir. 2003).

The government argues that the *Salim* ruling creates an alternative avenue of relief which precludes the district court's jurisdiction. However, the *Salim* court did not hold that the circuit court has the authority to hear all challenges to alienage status; it merely held that § 1252(a)(2)(C) did not strip the circuit court of its power to determine jurisdictional facts. *See id.* (citing *Drakes v. Zimski*, 240 F.3d 246, 247 (3d Cir.2001)). The Middle District of Pennsylvania has interpreted "jurisdiction to determine jurisdiction" cases as not creating an alternative avenue of relief which would impact the district court's jurisdiction over a habeas petition. *See Wilson v. INS*, 2001 WL 1528342 at *5 (M.D.Pa. Nov. 14, 2001) ("[S]ince the Third Circuit has not been designated as a forum to entertain [Petitioner's] challenge to his aggravated-felony status, . . . a petition for review is not an available remedy that would bar habeas jurisdiction here."). I find that the same is true for challenges to alien status.

Given the overriding nature of the language in § 1252(a)(2)(C) ("Notwithstanding any other provision of law . . ."), it trumps the procedural requirements of § 1252(b)(5)(C), and, therefore, the statutory scheme does not create an avenue of relief. As such, the Court has jurisdiction to determine the issues of alien status raised by Mr. Louis–Martin.[1]

---

1. On a more practical point, the government's interpretation of *Salim* would create the high-

ly undesirable result of forcing a petitioner to split his challenges between two courts when

### 2) Mr. Louis–Martin's Citizenship Status

■ Mr. Louis–Martin contends that under the Child Citizenship Act of 2000 (hereinafter the Act), he became a citizen of the United States when his mother was naturalized in November of 1997. For this argument to be correct, it would require the Court to find that the Act was retroactive and that Mr. Louis–Martin fulfilled the requirements of the Act. I find that he does not meet these requirements.

The government makes a lengthy argument that the Child Citizenship Act does not have a retroactive effect. I do not need to reach this issue because even if the Act were retroactive, Mr. Louis–Martin does not meet the requirements, which state:

A child born outside of the United States automatically becomes a citizen of the United States when all of the following conditions have been fulfilled:

1) At least one parent of the child is a citizen of the United States, whether by birth or naturalization.

2) The child is under the age of eighteen years.

3) The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence.

8 U.S.C. § 1431(a).

Assuming, without deciding, that the Act is retroactive, Mr. Louis–Martin fails to meet the requirements of the Act because he was never under the age of eighteen while being the child of a citizen of the United States. His mother gained citizenship in November of 1997. (Doc. 1, Ex. E). It is uncontested that Mr. Louis–Martin was already eighteen years of age at that time. (See, e.g., Doc. 1 at 2.) Therefore, Mr. Louis–Martin is not a citizen of the United States.

### 3) Mr. Louis–Martin's Nationality Status

■ Mr. Louis–Martin next contends that he is a national of the United States, which prevents him from being subject to removal under 8 U.S.C. § 1227(a)(2). A national is either a citizen of the United States, or a person who owes permanent allegiance to the United States. 8 U.S.C. § 1101(a)(22). The Court of Appeals for the Third Circuit has only recently examined the question of what constitutes a person owing permanent allegiance. Salim v. Ashcroft, 350 F.3d 307 (3d Cir. 2003). In Salim v. Ashcroft, the court discussed decisions by other circuit courts and concluded that residency coupled with an application for citizenship does not demonstrate a permanent allegiance to the United States. Id. at 310. The court did not define what facts would demonstrate permanent allegiance. Id.

In the present case, Mr. Louis–Martin argues that the combination of his permanent residency, his application for citizenship, and his honest although erroneous belief that he was a citizen qualify him as a national. At the March 1 hearing before the Court, Mr. Louis–Martin's attorney advanced the theory that the Louis–Martin family was erroneously informed by the Immigration and Naturalization Service (now the Bureau of Immigration and Customs Enforcement) that Mrs. Louis–Martin's naturalization also made her son, Mr. Louis–Martin, a citizen. However, there is no evidence on the record which would support this conclusion. Moreover, there is no record that this theory was ever

---

the he challenges his alien status in combination with other errors.

presented to the Immigration Judge or the Board of Immigration Appeals.

█ This leaves Mr. Louis–Martin in the factual scenario of being a permanent resident of the United States who applied for citizenship. "[S]imply filing an application for naturalization does not prove that one 'owes a permanent allegiance to the United States.' ... for one ... who is a citizen of another country, nothing less than citizenship will show 'permanent allegiance to the United States.'" *Id.* I find the Mr. Louis–Martin is not a national of the United States.

**4) Convention Against Torture Claims**

█ Mr. Louis–Martin lastly argues that the Board of Immigration Appeals committed an error of law when it deemed his claim under the Convention Against Torture (hereinafter the Convention) abandoned. The government attacks the Court's jurisdiction to hear this matter on the grounds that Mr. Louis–Martin did not exhaust his remedies because he never filed the Form I–589. I find this argument inapposite. Mr. Louis–Martin did not file the I–589 by a deadline set by the Immigration Judge. After that point, the Immigration Judge made a finding that Mr. Louis–Martin had abandoned the right to assert the protections of the Convention. (Doc. 6.1, Ex. C at 3.) Mr. Louis–Martin unsuccessfully appealed that decision to the Board of Immigration Appeals, and he now challenges that ruling. After the Board of Immigration Appeals ruled that his claim under the Convention was abandoned, Mr. Louis–Martin had a final ruling which is reviewable by this Court.

Mr. Louis–Martin argues that neither the Convention nor any statute impose a time limit for raising the protections of the Convention. The government does not offer any legal or regulatory authority which counters this proposition, although counsel did argue in the hearing that the Immigration Judge is free to set filing deadlines as part of the inherent powers of his position. I will evaluate the decision of the Immigration Judge on an abuse of discretion standard because he created the filing deadline under his discretionary powers. Under this standard, I will reverse the decision only "if it is arbitrary, irrational, or contrary to law." *See, e.g., Sevoian v. Ashcroft,* 290 F.3d 166, 174 (3d Cir.2002).

The Convention prohibits the Unites States from returning an individual to a country where there are substantial grounds to believe that he will suffer torture. *In re J–E–,* 23 I. & N. Dec. 291, 294 (BIA Mar. 22, 2002) (en banc). Federal regulations designate that an immigration judge may determine whether an applicant qualifies for the protections of the Convention. 8 C.F.R. § 208.16(a). The alien bears the burden of proving that there are substantial grounds to believe that he will be subjected to torture. 8 C.F.R. § 208.16(c)(2). Despite the lack of procedural deadlines in the regulations[2], the Immigration Judge determined that Mr. Louis–Martin had abandoned his right to invoke the Convention's protections because his attorney did not timely file the I–589. (Doc. 1, Ex. D at 64; Doc. 6.1, Ex. C at 4.) In doing so, the Immigration Judge denied Mr. Louis–Martin a hearing on the merits of his claim.

While it would be unreasonable and inappropriate for the Court to demand that any stray remark about torture should create a right to complete review of the claim, the facts of Mr. Louis–Martin's situation

---

**2.** 8 C.F.R. § 208.4 discusses the burdens of proof for filing the I–589 after the one year deadline, but the deadline referred to is the 8 U.S.C. § 1158(a)(2)(B) deadline for asylum applications, and which is separate and distinct from the Convention Against Torture.

rise to the level that the Immigration Judge could not ignore. Throughout the proceedings, the Immigration Judge found major deficiencies in the legal representation Mr. Louis–Martin had procured, particularly with counsel's failure to file the I–589.

JUDGE TO MR. TRUONG

Q. Now, Mr. Truong, I don't expect you to do a whole lot for Mr. Louis–Martin because you haven't done anything for him so far and I'll say that to you on the record. You have not done anything for Mr. Louis–Martin up to this point. Were I Mr. Louis–Martin and this is certainly his option and not mine, if I were Mr. Louis–Martin, I would report you to the bar association and the State of New York because you have not given him, I don't think, as much representation as you could have. You did not take my advice and go see him and get his paper [I–589] filed like I told you to. So I'll leave that to Mr. Louis–Martin. He's put his faith in you and it appears to be misplaced.

(Doc. 1, Ex. D at 66.) Although I will not make a finding of ineffective assistance of counsel, the Immigration Judge's impressions of counsel speak to the appropriateness of the exercise of his discretion.

In addition, after the Immigration Judge made it known that Mr. Louis–Martin was subject to deportation, he directly asked Mr. Louis–Martin if there were any facts which would prevent his deportation. (Doc. 1, Ex. C at 43.) It was at the invitation of the Immigration Judge that Mr. Louis–Martin explained his fear of death if returned to Haiti. (*Id.*) He further explained his family's political affiliation would subject him to grave risk. (*Id.* at 43–44.) The Immigration Judge did not permit Mr. Louis–Martin to expand upon these claims and ordered him to submit an I–589. (*Id.* at 43–46.) When Mr. Louis–

Martin's counsel failed to comply with the deadline, the Immigration Judge refused to grant any other relief or remedy, and he summarily ruled the claim abandoned. (Doc. 1, Ex. D.)

The Convention places a duty upon the United States to not deliver people into the hands of torturers. Mr. Louis–Martin's statements in open court put the Immigration Judge on notice that Mr. Louis–Martin might fall within the protections of the Convention. To ignore this claim on the basis of a defect in a procedure created by the discretion of the Immigration Judge is inconsistent with the fundamental respect for human life underlying the Convention. Such an action goes beyond the power entrusted to any judge and constitutes an abuse of discretion.

As such, I find that the Immigration Judge abused his discretion when he deemed the Mr. Louis–Martin's claims under the Convention abandoned. I will vacate the Decision of the Board of Immigration Appeals, as well as the Order of the Immigration Judge which ordered Mr. Louis–Martin's removal from the United States to Haiti. I will remand the matter to the Bureau of Immigration and Customs Enforcement for a determination of whether Mr. Louis–Martin is eligible for the protections of the Convention.

Nothing in this opinion should be interpreted as excluding Mr. Louis–Martin from complying with the procedural requirements of the Bureau of Immigration and Customs Enforcement. I rest my decision on particular facts of the case up to this point. Any future non-compliance with procedural requirements, including the untimely filing of the I–589, would be evaluated on the facts of those events.

## CONCLUSION

I find that the Court has jurisdiction to hear this matter under 28 U.S.C. § 2241.

I find that Mr. Louis–Martin is not a citizen because he was over the age of eighteen when his mother was naturalized. Mr. Louis–Martin is not a national of the United States because an application for citizenship does not create nationality. I further find that the Immigration Judge abused his discretion in ruling that Mr. Louis–Martin abandoned his Convention Against Torture claim. I will vacate the Decision of the Board of Immigration Appeals and remand the matter to the Bureau of Immigration and Customs Enforcement for further proceedings.

An appropriate Order follows.

### ORDER

NOW, this ____5th____ day of March, 2004, **IT IS HEREBY ORDERED THAT**:

1) Petitioner Nickenson Louis–Martin's Petition for Writ of Habeas Corpus (Doc. 1.) is **GRANTED.**

2) The Decision of the Board of Immigration Appeals is **VACATED.**

3) The Order of the Immigration Judge ordering Mr. Louis–Martin's removal from the United States to Haiti is **VACATED.**

4) This matter is **REMANDED** to the Bureau of Immigration and Customs Enforcement for further proceedings not inconsistent with this decision.

5) The Clerk of the Court shall mark this case **CLOSED.**