**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2717
_____

DRANDE VILIJA, a/k/a Pregjins Fati, a/k/a Regjina
Fati, a/k/a Drande Vidhja; EDUARD VILIJA, a/k/a
Edward Vidhja; ADRIAN VILIJA, a/k/a Adrian Vidhja,

                Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES

                Respondent

_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency Nos. A077-027-881, 882, & 883)
Immigration Judge: Henry S. Dogin

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 6, 2011
Before: SLOVITER, CHAGARES and WEIS, Circuit Judges
(Opinion filed: April 8, 2011)
_____

OPINION
_____

PER CURIAM.

       Drande Vilija ("Vilija") petitions for review of the Board of Immigration

Appeals' final order of removal. For the reasons that follow, we will deny the petition for

review.

Vilija, a native and citizen of Albania, arrived in the United States with her two sons (who are now adults) on May 6, 1998. She thereafter was served with a Notice to Appear, which charged that she is removable under Immigration & Nationality Act ("INA") § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an alien not in possession of a valid entry document, and § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), as an alien who has committed fraud to obtain an immigration benefit. Vilija applied for asylum, withholding of removal, and protection under the Convention Against Torture, claiming political persecution.[1]

At her hearing on January 29, 1999, Vilija testified that she and her children were at risk because, on February 28, 1998, seven individuals from the Socialist Party entered her home and requested "a big sum of money." A.R. 196. Her father-in-law told them that he did not have the money, and, in response, those individuals beat Vilija and her father-in-law, and then kidnapped her younger son, Adrian, and held him for several hours at "the office of the communists." Id. at 201. After Adrian's release, Vilija received letters under her door from time to time, demanding money and threatening to take both her sons if she did not pay. See id. at 203. Apart from the 1998 incident, Vilija claimed that, prior to 1985, her father was interned in a labor camp for five years because of his political opposition to communism, and, consequently, she was unable to attend school beyond the eighth grade. See id. at 222. Between 1993 and 1997, her husband suffered persecution at the hands of the police, and, during one such

---

[1] Vilija's sons are derivative beneficiaries of her application. Her husband, Prele Vilija, filed his own application and was in proceedings separate from his family.

encounter in July, 1996, a policeman pushed her down, causing her wrist to break. See id. at 213-14. Vilija's son Adrian testified about the kidnapping, see id. at 250, and Vilija's husband testified about his activities on behalf of the Democratic Party, and that he was beaten by members of the Democratic Party after he tried to leave the party, see id. at, 259, 262-63.

Following the hearing, the Immigration Judge denied relief. The IJ concluded that, although Vilija and her family of origin may have suffered under the old Communist regime, the kidnapping of her son for a few hours was not politically motivated. It was carried out by criminal elements bent on extortion. The IJ found Vilija's other testimony not credible based on inconsistencies. The IJ did not believe that Vilija and her husband had been persecuted on the basis of his membership in the Democratic Party, or his resignation from that party; the IJ believed that Vilija left Albania because of the high level of random violence in that country. The fraud charge was dismissed, but Vilija and her sons were found removable under INA § 212(a)(7)(A)(i)(I). The IJ ordered them removed to Albania. On September 18, 2002, the Board of Immigration Appeals affirmed without opinion, 8 C.F.R. § 3.1(a)(7). Vilija did not petition for review of this decision.

Over seven years later, on November 10, 2009, Vilija filed a motion to reopen removal proceedings, seeking an exception from the timeliness requirement based on changed conditions in Albania. Vilija claimed that her family was in jeopardy due to the ongoing political strife in Albania. In support, she submitted an affidavit from Prenk Camaj, a former Catholic priest who claimed to be an expert on country conditions in

Albania. Camaj stated in his affidavit that crime and corruption were out of control in Albania when the Socialist Party was in power from 1997 to 2005. A.R. 75. In addition, conditions in Albania had deteriorated since the elections in 2009. A.R. 58-59. Vilija also submitted an article from the New York Times about Albania's "blood feuds," and two internet articles concerning the Socialist Party's challenge to the results of the 2009 elections. See id. at 91-93. On May 13, 2010, the Board denied the motion to reopen as untimely filed. The Board found that the motion did not qualify for the exception based on changed country conditions. The Board acknowledged the ongoing conflict between the Socialist Party and the Democratic Party, but, as for Vilija's argument that she has a well-founded fear of future persecution, the Board determined that it lacked merit, explaining:

> To the extent [she] may be claiming a fear of persecution because of the husband's purported membership in the Democratic Party, we point out both that this claim was found not credible below and that the evidence submitted with the motion reflects that the Democratic Party has dominated in both the 2005 and 2009 elections in Albania. The respondents have not shown that there has been a change in Albania since the time of their hearing that is material to an asylum claim.

A.R. 4.

Vilija has timely petitioned for review. We have jurisdiction under 8 U.S.C. §1252(a)(1), (b)(1). Vilija contends in her brief on appeal that the Board abused its discretion in denying the motion to reopen as untimely filed because her new and material evidence shows that conditions in Albania have deteriorated since, January, 1999. She contends that the Board did not adequately consider Camaj's report,

4

Petitioner's Brief, at 13-14, which contends that the Democratic government is in danger of being overthrown, see id. at 15, and that, regardless of which party is in power, the Vilija family is in danger because they have suffered under both political parties, see id. at 17.

We will deny the petition for review. We review the Board's denial of a motion to reopen for abuse of discretion. Immigration & Naturalization Serv. v. Doherty, 502 U.S. 314, 323 (1992). Under this deferential standard of review, we will not disturb the Board's decision unless it is arbitrary, irrational, or contrary to the law. See Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir. 2004). Motions to reopen removal proceedings are "disfavored" because, "'as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States.'" Lu v. Ashcroft, 259 F.3d 127, 131 (3d Cir. 2001) (quoting Doherty, 502 U.S. at 323).

"A motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material." 8 C.F.R. § 1003.2(c)(1). "A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." Id. The "motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened," id. at 1003.2(c)(2), except that the time limitation does not apply where the alien seeks to "apply or reapply for asylum or withholding of deportation based on changed circumstances arising in the country of nationality or in the country to which

5

deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing," id. at 1003.2(c)(3)(ii). See also 8 U.S.C. § 1229a(c)(7)(C)(ii).

Vilija's motion to reopen was not filed within 90 days of the Board's September, 2002 decision and thus was untimely filed. Moreover, we conclude that the Board's determination that she failed to demonstrate changed country conditions sufficient to excuse her untimely motion to reopen was not arbitrary, irrational, or contrary to law. Guo, 386 F.3d at 562. Vilija contends through her expert, Camaj, that Albania was chaotic from 1997 until 2005, when the Democratic Party finally won control of the government. Camaj stated that, from 1997 to 2005, "many lives were lost." A.R. 64. Since 2005, conditions have been "chaotic." See id. at 65. Albania was run by the Socialist Party until late 2005. See id. The Democratic Party came to power in 2006 but it has been guilty of "infighting." See id. at 66. Albania again was thrown into turmoil during and after the June, 2009 parliamentary elections. See id. at 58-59. Impliedly acknowledging that the United States Department of State's recent country reports would not support Vilija's claim for asylum, Camaj expressed the view that the State Department underreports incidents of political violence in Albania because it is in the United States' security interests to do so. See id. at 73-74. Camaj questions the credibility of the Country Reports. See id.

The Board did not find the Camaj report to be persuasive evidence that country conditions in Albania have worsened since January, 1999, and we conclude that this was not an abuse of the Board's discretion. In general, Camaj's report indicates that

6

there is an ongoing conflict between the two rival parties, which may not have improved over the last ten years but certainly has not worsened. As to the particular events concerning the June, 2009 parliamentary elections, Camaj's report states that Albania is again chaotic, see id. at 80, but the Democratic Party won that election. Moreover, the internet articles Vilija submitted in support of her motion to reopen state only that the opposition Socialist Party has boycotted Parliament since September, 2009, and not that politically motivated violence is on the rise in Albania. See id. at 91, 93. Moreover, some of the criticism Camaj leveled at the State Department concerned its underreporting of the trafficking of women, see id. at 74-75, but Vilija's allegations of persecution do not concern human trafficking. Accordingly, to the extent the Board gave little weight to Camaj's opinion, we cannot say that doing so was arbitrary, irrational, or contrary to the law. See Guo, 386 F.3d at 562.

Vilija contends that the Board erred in not explicitly considering all of her country conditions evidence, see Zheng v. Att'y Gen. of U.S., 549 F.3d 260, 268 (3d Cir. 2008), but the Board explicitly referenced Camaj's report, her principal evidence, in its decision. The New York Times article about blood feuds[2] is not material to Vilija's claim of political persecution because the article does not state or even suggest that blood feuds are perpetrated on the basis of political affiliation. See id. at 268 (Board must explicitly consider any country conditions evidence that *materially* bears on an

---

[2] The article states that, "[u]nder the Kanun, an Albanian code of behavior that has been passed on for more than 500 years, 'blood must be paid with blood,' with a victim's family authorized to avenge a slaying by killing any of the killer's male relatives." A.R. 88.

7

applicant's claim).  See also 8 C.F.R. § 1003.2(c)(3)(ii) (evidence in support of motion to reopen based on changed country conditions must be both material and previously unavailable).  The article states only that blood feuds became a problem after the fall of Communism ushered in a new period of lawlessness.  A.R. 89.  The two internet articles noting the Socialist Party boycott of the 2009 elections provide no support for Vilija's assertion that conditions in Albania have worsened since 1999.

We note that Vilija argued in her motion to reopen that "[r]eligious persecution is another aspect of this family's claim that was not properly examined earlier," A.R. 27; see also Petitioner's Brief, at 17-18, but Vilija did not raise a claim of religious persecution in the original proceedings, and there is no evidence that Vilija fears persecution on this ground.  Her argument concerning the Convention Against Torture, see Petitioner's Brief, at 18, fails for similar reasons; Vilija did not raise a claim for protection under the CAT before the IJ or before the Board, either on direct appeal or in her motion to reopen.  We generally are unable to review claims where administrative remedies have not been exhausted.  See Alleyne v. Immigration & Naturalization Serv., 879 F.2d 1177, 1182 (3d Cir. 1989).  See also Duvall v. Elwood, 336 F.3d 228, 234 (3d Cir. 2003).  Last, we note that Vilija's claim for asylum is the same as it was in her original application, and yet she made no effort to rebut the Board's original adverse credibility determination.  Cf. Guo, 386 F.3d at 562 (prior adverse credibility finding for religious persecution claim was not relevant to subsequent motion to reopen asserting claim based on China's coercive population control policies).

In sum, Vilija has not shown that conditions in Albania are materially worse than they were in 1999, and thus she has failed to demonstrate that the Board's decision to deny her motion to reopen as untimely was an abuse of discretion.

For the foregoing reasons, we will deny the petition for review.