

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-11-2003

# Duvall v. Dist Dir INS Phila

Precedential or Non-Precedential: Precedential

Docket No. 02-3829

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Duvall v. Dist Dir INS Phila" (2003). *2003 Decisions.* Paper 326.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/326

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed July 11, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-3829

ANDREA PATRICIA DUVALL

v.

KENNETH JOHN ELWOOD,
DISTRICT DIRECTOR, U.S.
DEPARTMENT OF JUSTICE

Kenneth Elwood, Philadelphia
District Director of the
Immigration and
Naturalization Service,

*Appellant*

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 02-CV-2081)
District Judge: Honorable Edmund V. Ludwig

Argued: Thursday, April 24, 2003

Before: SCIRICA, *Chief Judge*, AMBRO and
GARTH, *Circuit Judges*

(Opinion Filed: July 11, 2003)

Donald E. Keener
Anthony A. Yang (argued)
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044

Susan R. Becker
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, Pennsylvania 19106

*Attorneys for Appellant*

Derek W. Gray (argued)
Steel, Rudnick & Ruben
1608 Walnut Street, Suite 1500
Philadelphia, Pennsylvania 19103

*Attorney for Appellee*

---

## OPINION OF THE COURT

---

GARTH, *Circuit Judge*:

The Government appeals from an order of the District Court granting Andrea Duvall's habeas corpus petition. The District Court ruled that the Board of Immigration Appeals ("BIA") erred when it held that the doctrine of collateral estoppel did not bar the Immigration and Naturalization Service ("Service") from relitigating Duvall's alienage during a different proceeding involving two new crimes she committed.

We do not reach the merits of the collateral estoppel question decided in Duvall's favor by the District Court. Instead, we hold that the District Court lacked jurisdiction to entertain Duvall's habeas corpus petition. Accordingly, we will vacate the District Court's judgment[1] and remand

---

1. The District Court's August 9, 2002 judgment granted Duvall's petition for a writ of habeas corpus, barred the Service by collateral estoppel from relitigating the issue of alienage and released Duvall from custody by the Service.

with a direction that the District Court dismiss Duvall's habeas petition.

I.

The District Court held that it had jurisdiction over this habeas action pursuant to 28 U.S.C. § 2241. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. We have plenary review over a district court's grant of a habeas corpus petition, *see Yang v. Maugans*, 68 F.3d 1540, 1546 (3d Cir. 1995), and a district court's subject matter jurisdiction. *See Growth Horizons, Inc. v. Delaware Country, Pa.*, 983 F.2d 1277, 1280 (3d Cir. 1993).

II.

Andrea Duvall is a native and citizen of Jamaica who, in October 1993, became a lawful permanent resident in the United States. Since arriving in the United States in 1987, she has been no stranger to crime. In 1989, she pled guilty to crimes of petit larceny and retail theft, and was convicted of another incident of retail theft. Also in that year, she pled guilty to three other offenses—two for retail theft and one for third-degree felony theft by receiving stolen property. These pleas did not account for all of the other criminal offenses with which she was charged. Other charges were dropped in exchange for her testimony against a co-conspirator. In 1990, Duvall again pled guilty to separate instances of shoplifting and retail theft. In the early 1990s, she was convicted on two more unrelated charges of retail theft and for possession of burglar's tools.

These convictions led to a November 1993 deportation hearing. At that hearing, Duvall refused to answer questions about her alienage. The Service then sought to introduce her application for permanent residence. In that application, Duvall admitted her alienage, but the Immigration Judge ("IJ") excluded the document from evidence as the Service had failed to comply with Local Rules, which required that the document be submitted ten days prior to hearing. Accordingly, the IJ held that the Service could not prove alienage and thus ended the hearing.

Undaunted, Duvall continued her criminal exploits, acquiring two additional felony convictions by 2000.[2] Following these convictions and after having been informed of her right to remain silent, on March 12, 2001 she offered a voluntary sworn statement with the Service admitting her alienage. Subsequently, the Service initiated new removal proceedings against her on March 16, 2001, charging that she was an alien subject to removal for having been convicted for two new crimes involving moral turpitude, 8 U.S.C. § 1227(a)(2)(A)(ii), and for being convicted of an aggravated felony involving a theft offense for which a term of imprisonment of at least one year was imposed, 8 U.S.C. § 1227(a)(2)(A)(iii).

The IJ terminated proceedings on June 6, 2001, granting Duvall's motion to collaterally estop the Service from relitigating the alienage issue. On December 6, 2001, the BIA reversed the IJ's collateral estoppel ruling and remanded for proceedings to continue before the IJ. The BIA denied Duvall's motion for rehearing on March 20, 2002.

Subsequently, Duvall filed a habeas petition in the District Court for the Eastern District of Pennsylvania on June 6, 2002. The District Court granted her petition on August 9. *Duvall v. Elwood*, No. CIV.A.02-2081, 2002 WL 1870457 (E.D. Pa. Aug. 9, 2002) (unpublished). In granting her petition, the District Court focused wholly on the collateral estoppel issue and held that the Service was barred from relitigating the issue of alienage. Accordingly, the District Court entered an order which directed Duvall's release from the Service. In granting Duvall's petition, the District Court gave short shrift to the question of the court's jurisdiction and indeed erred in holding that Duvall did not have to exhaust administrative remedies.

### III.

Our analysis begins with the Immigration and Naturalization Act ("INA") § 242(d)(1), 8 U.S.C. § 1252(d)(1),

---

2. In 1995, Duvall pled guilty to third-degree felony retail theft. In July 2000, she pled guilty to another third-degree felony retail theft.

which provides, in pertinent part, that "[a] court may review a *final order of removal* only if — the alien has *exhausted all administrative remedies* available to the alien as of right. . . ." (emphasis supplied).

Notwithstanding this provision, the District Court concluded, without analysis, that it had habeas jurisdiction under 28 U.S.C. § 2241 to entertain Duvall's claim. In so doing, the District Court stated that "[e]xhaustion of administrative remedies is not required here and defendant has not raised it as a defense. *McCarthy v. Madigan,* 503 U.S. 140, 144 (1992) (exhaustion is a matter of judicial discretion unless mandated by statute)." *Duvall*, 2002 WL 1870457, at *1 n.1.[3]

It is settled that where Congress has "clearly required exhaustion," *McCarthy*, 503 U.S. at 144, or where congressional intent is at least "fairly discernible," *Massieu v. Reno*, 91 F.3d 416, 420 (3d Cir. 1996) (citation omitted), exhaustion will be deemed statutorily mandated.

The predecessor to 8 U.S.C. § 1252(d)(1), which is the relevant statute here, was 8 U.S.C. § 1105a(c).[4] Section 1105a(c) was repealed in 1996 and replaced by the current § 1252(d). The predecessor statute, just as the current statute, denied review of orders of deportation or removal where an alien had not exhausted administrative remedies.

Section 1252(d)(1) reads, in relevant part: "A court may review *a final order of removal* only if—(1) the alien has *exhausted all administrative remedies* available to the alien as of right. . . ." 8 U.S.C. § 1252(d)(1) (emphasis supplied).

---

3. The District Court noted further that the Government did not raise exhaustion as a defense, implying that it had waived recourse to such an argument. However, subject matter jurisdiction can never be waived. *See, e.g., Okereke v. United States*, 307 F.3d 117, 120 n.1 (3d Cir. 2002).

4. The prior codification of § 1252(d) was INA § 106(c), 8 U.S.C. § 1105a(c) (1994), which was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. 104-208, Div. C. Title III, § 306(b), 110 Stat. 3009-612. Similar to § 1252(d), § 1105a(c) provided, in pertinent part, that "an order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations." INA § 106(c), 8 U.S.C. § 1105a(c).

Section 1105a(c) states the same requirements in essentially the same language:

> (c) Exhaustion of administrative remedies . . . .
>
> *An order of deportation* or of exclusion *shall not be reviewed* by any court *if the alien has not exhausted the administrative remedies* available to him as of right . . . . Every petition for review or for habeas corpus shall state whether the validity of the order has been upheld . . . .

8 U.S.C. § 1105a(c) (repealed 1996) (emphasis supplied).[5]

5. We are aware that the current § 1252(d)(1) does not mention habeas corpus whereas its predecessor, § 1105a(c), does. The question as to whether there is a distinction as to "review" (a direct appeal from the BIA) versus a habeas corpus petition, was addressed in *INS v. St. Cyr*, 533 U.S. 289 (2001). In *St. Cyr*, the issue before the Supreme Court was whether certain jurisdiction-stripping provisions of the INA (8 U.S.C. §§ 1252(a)(1), 1252(a)(2)(C), and 1252(b)(9) (1994 ed., Supp. V)) removed entirely from federal courts the jurisdiction to hear habeas cases involving certain types of immigration orders, where direct appeals to the federal courts had been removed. *St. Cyr*, 533 U.S. at 310-11. The Supreme Court held that these provisions did not bar habeas review because such a construction would "invoke[ ] the outer limits of Congress' power," and thus "would raise serious constitutional problems," *id.* at 299-300, and thereby should not be adopted without "a clear statement of congressional intent to repeal habeas jurisdiction." *Id.* at 298. As a basis for this conclusion, the Supreme Court reasoned that references in the statutory provisions at issue to "judicial review" or "review" should not be read to foreclose habeas corpus review because "[i]n the immigration context, 'judicial review' and 'habeas corpus' have historically distinct meanings." *Id.* at 311-12 (citation omitted).

Since *St. Cyr*, the question as to whether there is a distinction between "review" (direct appeal from the BIA) as distinct from a habeas corpus petition, in the context of § 1252(d)(1) in particular, has been addressed in *Sundar v. INS*, 328 F.3d 1320, 1324-25 (11th Cir. 2003) (no distinction) and *Beharry v. Ashcroft*, 329 F.3d 51, 59-63 (2d Cir. 2003) (not decided). The Eleventh Circuit distinguished *St. Cyr*, which Sundar raised in support of his argument. Relying on *St. Cyr*, Sundar argued that "review" in § 1252(d)—"A court may *review* a final order of removal only if "—applies only to direct review proceedings in the courts of appeals and not to habeas proceedings. *Sundar*, 328 F.3d at 1324 (emphasis supplied). The Eleventh Circuit distinguished *St. Cyr*'s parsing

Because both statutes in their "review" clauses are virtually identical and because 8 U.S.C. § 1105a(c) was the subject of our *Massieu* opinion, we find *Massieu*'s analysis and discussion instructive and controlling here. We held in *Massieu* that the exhaustion requirement of § 1105a(c) was statutory and thus jurisdictional, thereby barring a petition for habeas corpus in the district court where there was no final order and no exhaustion of administrative remedies. We also held that Massieu's claim—that the provision of the INA under which he was deportable was unconstitutional—did not provide an exception to the jurisdictional requirements of §1105a(c) because such a claim was not collateral to his deportability and because he could receive meaningful review of his claims in this court after final administrative action. *Massieu*, 91 F.3d at 426.

In *Massieu,* we acknowledged that the immigration courts are not authorized to consider the constitutionality of their own governing statute, but we were persuaded by the fact that exhaustion could well resolve any controverted matter without the need for involvement by the federal courts. We also relied on the fact that we could consider any constitutional challenge upon completion of the administrative proceedings. We allowed that there was one

of the meaning of "review" as being limited to the context of the jurisdiction-stripping provisions of the IIRIRA amendments. *Id.* at 1324-25. The Eleventh Circuit pointed out the obvious contrast of the jurisdiction-stripping provisions at issue in *St. Cyr* with § 1252(d), which does not completely preclude jurisdiction, but rather limits habeas jurisdiction to aliens who have exhausted their administrative remedies, and thus, not implicating a constitutional question. *Id.* at 1324 ("The difference is that between a reasonable condition precedent and an unconditional preclusion.").

We need not discuss in more detail that issue in this case as Duvall has not raised it nor relied upon it. It suffices for us to say that the requisites of § 1252(d)(1) do indeed apply to petitions for habeas corpus, notwithstanding the fact that the statute does not specifically reference habeas corpus. To read the statute otherwise would defeat the statute's purpose in seeking to streamline the administrative process and in preventing delay by premature and unnecessary recourse to a federal court. *See Massieu*, 91 F.3d at 421-22.

exception to our jurisdictional holding. That exception involved an issue "entirely collateral" to the merits, *id.* at 422-24, an exception that has no relevance to Duvall's petition.

Based on our detailed analysis in *Massieu*, including consideration of Congress's stated purpose, the statute's legislative history and the overall structure of the administrative process (with due consideration given to a petitioner's securing meaningful review of his claims after exhaustion), *see id.* at 420, we held that the District Court lacked jurisdiction to entertain Massieu's petition in that Massieu had failed to obtain a final order of removal and had failed to exhaust administrative remedies. *Id.* at 426. While *Massieu*, as we have recited, was concerned with § 1105a(c), whereas here we are concerned with its successor, § 1252(d)(1), the identity of the two statutes compels us to conclude that § 1252(d)(1) also requires exhaustion as a prerequisite for federal jurisdiction.[6] In this connection, although *Massieu* did not dwell on the "final order" element of the statute, we also conclude that a final order of removal is a requisite for jurisdiction. Parenthetically, we note that neither in *Massieu*, nor in the present case involving the petitioner Duvall, was there a final order of removal. Indeed, Duvall acknowledges in her brief to this court that ". . . no final order of removal has ever been issued in Ms. Duvall's case."

As we have recognized, our reading of the two statutes, § 1252(d)(1) and § 1105a(c), satisfies us that they are so

---

6. Indeed, the legislative history of Section 306 of IIRIRA, which gave rise to 8 U.S.C. § 1252(d)(1), although scant, says as much. The legislative history that does exist strongly suggests that the purpose of the two provisions is one and the same. Indeed, the House's conference report states that the recodification was a "restate[ment of] the current provisions in the first . . . sentence[ ] of subsection (c) of current section 106 requiring that a petitioner have exhausted administrative remedies." H.R. Conf. Rep. No. 104-828, at 220 (1996); *see also id.* at 219 ("This section [306] amends INA section 242 to revise and restate the provisions in current section 106, which is repealed.").

similar that *Massieu*'s analysis and holding govern the result we reach here.[7]

Our conclusion that § 1252(d)(1) jurisdictionally bars Duvall's petition finds support in the Eleventh Circuit's *Sundar* opinion. *See Sundar v. INS*, 328 F.3d 1320 (11th Cir. 2003). In *Sundar*, the petitioner, whose removal had been ordered, claimed that administrative exhaustion does not apply in habeas proceedings—an argument rejected by the Eleventh Circuit. *Sundar*, 328 F.3d at 1324-25; *see also supra* note 5. The interpretation of § 1252(d)(1) and the Eleventh Circuit's analysis of Sundar's unexhausted claims bolster our holding that jurisdiction is lacking over Duvall's petition. As *Sundar* and *Massieu* recognize, "[E]xhaustion serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency . . . ." *Sundar*, 328 F.3d at 1323 (citation omitted).

In the present case, when the BIA rejected Duvall's claim of collateral estoppel and remanded for a hearing before the IJ, Duvall, in order to exhaust administrative remedies, was obliged to return to the IJ. At that point, the IJ could have dealt with her two most recent convictions in 1995 and 2000, as well as with the issue of her alienage, which she admitted in March 2001. Duvall could have then appealed the IJ's order (if adverse to her) to the BIA. Once the BIA had issued a final order of removal, if it did, Duvall could have sought to challenge such a final order of removal in district court.

---

7. In a F.R.A.P. 28(j) letter sent subsequent to oral argument, Duvall contends that *Massieu* is distinguishable. She points out that Massieu sought to bypass completely the statutorily prescribed procedures for administrative and judicial review by commencing an action in district court, without even engaging in hearings by an IJ, nor did Massieu appeal a decision by the IJ to the BIA.

Duvall claims that she, on the other hand, has exhausted the administrative proceedings before the IJ and BIA with respect to the determinative issue of collateral estoppel. We do not agree. An order respecting the collateral estoppel issue did issue from the BIA but as we have recognized and as Duvall herself recognizes, no "*final order of removal*" has ever issued and as we discuss in text, Duvall has failed to exhaust administrative remedies.

Her failure to follow this procedure was fatal to the District Court's jurisdiction over her habeas petition.

First, Duvall claims that she is not seeking a review of a "final order of removal." It is obvious that she cannot because, as she admits and as we have noted, no such final order has ever been issued. Duvall claims further that she is only seeking to review her detention by the Service—a detention from which she has been released. Yet, this deliberate phrasing of her claim, when she is really challenging the collateral estoppel ruling, cannot escape the jurisdictional requirements of § 1252(d)(1).

A "final order," as the Government points out, has long been understood " 'to include[ ] all matters on which the validity of the final order is contingent.' " *INS v. Chadha*, 462 U.S. 919, 938 (1983) (citation omitted) (interpreting § 1105a). Thus, as this court explained in *Massieu*, "even when an alien is attempting to prevent . . . deportation proceeding[s] from taking place in the first instance and is thus not, strictly speaking, attacking a final order of deportation . . . , it is well settled that 'judicial review is precluded if the alien has failed to avail himself of all administrative remedies,' one of which is the deportation . . . hearing itself." *Massieu*, 91 F.3d at 421 (citations omitted). It is significant to us as well that Duvall does not even focus on "detention" as the central point of her appeal. Rather, her brief, her argument and her analysis deal solely with the issue of collateral estoppel.

Duvall also asserts that the Government waived any exhaustion requirement because it failed to argue that issue before the District Court. Earlier in this opinion, *see supra* note 3, we have adverted to the District Court's opinion, which implied that this defense was waived. Just as we have held that the District Court erred, so do we reject Duvall's argument of waiver. Subject matter jurisdiction is always available at all judicial stages of review for our examination.

Lastly, Duvall claims that it would be futile to exhaust her administrative remedies, referring to the doctrine that where exhaustion is not clearly mandated by statute, a futility exception exists. In particular, she urges that

further administrative proceedings would be futile where the BIA has already definitively decided that collateral estoppel does not bar relitigation of whether she is an "alien" and there is no change in the facts or case law to suggest that the BIA would change its conclusion.

We cannot agree. It is clear that we have rejected such an exception where the statute involved, such as § 1252(d)(1), requires exhaustion as a matter of jurisdiction. *See Nyhuis v. Reno*, 204 F.3d 65, 69 (3d Cir. 2000) (a statute with "a jurisdictional requirement, . . . by definition cannot be subject to a futility exception."); *see also Massieu*, 91 F.3d at 424-25.

## IV.

We have held that the District Court had no jurisdiction to entertain Duvall's petition. Duvall, as we have taken pains to point out, and as she has admitted, was not issued a final order of removal and has not exhausted administrative remedies which Congress, through its enactment of § 1252(d)(1), required before a district court can acquire jurisdiction.

Hence, the District Court should have dismissed Duvall's petition without reaching the merits, i.e., the collateral estoppel issue advanced by Duvall. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (internal quotations and citation omitted); *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379 (1981) ("A court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ."). Just as the District Court should not have considered the merits because it had no jurisdiction to do so, no more will we.

We will vacate the judgment of the District Court and remand to that court with a direction to dismiss Duvall's petition for want of jurisdiction.

12

A True Copy:
        Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*