**Sokha SUN, Petitioner–Appellant,**

v.

**John ASHCROFT, Attorney General; Immigration and Naturalization Service; Robert Coleman, District Director of INS, Respondents–Appellees.**

No. 02–36132.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 10, 2003.

Filed June 4, 2004.

Robert Pauw, Gibbs Houston Pauw, Seattle, WA, for the petitioner-appellant.

Christopher L. Pickrell, Assistant United States Attorney, Seattle, WA, for the respondents-appellees.

Before: THOMPSON, HAWKINS, and BERZON, Circuit Judges.

BERZON, Circuit Judge:

Petitioner Sokha Sun was born in a refugee camp in Thailand as a Cambodian refugee. He entered the United States at the age of two-and-a-half months, on July 24, 1979. Sun's status was adjusted to

lawful permanent resident ("LPR") in August 1983, retroactive to his date of entry. One of Sun's sisters is an American citizen, and his mother and another sister are LPRs.

In February 2001, Sun pled guilty to possession of a stolen firearm, and was sentenced to a year and a day in jail. The Immigration and Naturalization Service ("INS")[1] subsequently issued a Notice to Appear, alleging Sun to be removable because of his firearm conviction. The Notice was later amended to charge an aggravated felony. In April 2002, an Immigration Judge ("IJ") in Seattle issued an order of removal on this basis, finding Sun to be ineligible for asylum and cancellation of removal.[2] Sun withdrew his applications for withholding of removal and relief under the Convention Against Torture. He waived his right to appeal, thereby making his removal order final.

In June 2002, Sun filed the habeas petition now before us. A magistrate judge recommended that the petition be denied, and the district court adopted her report without comment. We are asked to decide three questions: (1) whether Sun was required to exhaust his administrative remedies before bringing this habeas action; (2) whether Sun was a refugee at the time his removal order was issued, even though he had acquired LPR status; and (3) whether Sun's removal would violate his constitutional rights. We decide only the first and third questions, as the second is pretermitted by our conclusion that Sun was obliged to exhaust his administrative remedies with regard to the statutory issue.

## I

## Exhaustion of Administrative Remedies

### A. Habeas Petitions and IIRIRA

■ Section 242(d) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(d), enacted by IIRIRA,[3] states in relevant part: "(d) Review of final orders[.] A court may review a final order of removal only if—(1) the alien has exhausted all administrative remedies available to the alien as of right...." "We have not addressed the applicability of 8 U.S.C. § 1252(d)(1) to habeas petitions." *Noriega–Lopez v. Ashcroft*, 335 F.3d 874, 880 n. 4 (9th Cir.2003).

The district court thought otherwise. The court relied on *Castro–Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir.2001), in holding that Sun did not have to exhaust his administrative remedies.

*Castro–Cortez*, however, concerned a situation in which no administrative remedies as of right were available, although the habeas petitioners could have but did not file a petition for review with this court. *Id.* at 1044–45. As § 1252(d)(1)[4] only requires exhaustion of such *administrative*

---

1. On March 1, 2003, the INS ceased to exist and its functions were transferred to the newly-created Department of Homeland Security. *See Aguilera–Ruiz v. Ashcroft*, 348 F.3d 835, 835 n. * (9th Cir.2003). For the sake of consistency, we will refer to the agency as the INS throughout this opinion.

2. The one-page "Amended Indicia of Oral Decision of Immigration Judge" does not specify the ground on which the IJ found Sun to be ineligible for asylum and cancellation of removal, and the IJ's oral decision is not in the record. The record, however, contains a declaration by Sun's prior counsel attesting to the IJ's invocation of the aggravated felony bar, so the basis for the removal order is not here in dispute.

3. The Illegal Immigration Reform and Immigrant Responsibility Act, Pub.L. No. 104–208, 110 Stat. 3009–546 (1996).

4. Except as otherwise noted, all references are to Title 8 of the U.S.Code.

remedies as are available as of right, it had no application to the circumstances of the habeas petitioners in *Castro–Cortez*. Consistent with the limited language of § 1252(d)(1), *Castro–Cortez* did not address the application of that section to the habeas petitions before the court. Instead, *Castro–Cortez* considered only whether the plaintiffs were obligated to exhaust *judicial* remedies, applying with respect to that question the judicially created, prudential exhaustion doctrine applicable to all habeas petitions filed under 28 U.S.C. § 2241. *See Castro–Cortez*, 239 F.3d at 1047.

We have also stated that:

> Before a petitioner can raise an argument on appeal, the petitioner must first raise the issue before the BIA or IJ. INA § 242(d), 8 U.S.C. § 1252(d). *See also Liu v. Waters*, 55 F.3d 421, 424 (9th Cir.1995). Similarly, the petitioner must exhaust administrative remedies before raising the constitutional claims in a habeas petition when those claims are reviewable by the BIA on appeal, such as ineffective assistance of counsel claims. *Liu*, 55 F.3d at 425.

*Rojas–Garcia v. Ashcroft*, 339 F.3d 814, 819 (9th Cir.2003). The supporting citation for *Rojas–Garcia's* habeas exhaustion requirement, however, *Liu v. Waters*, 55 F.3d 421(9th Cir.1995), was an exhaustion case decided under former § 1105a(c), *see Liu*, 55 F.3d at 424, a provision quite similar, in some respects, to, but not the same as, § 1252(d)(1).[5] *Rojas–Garcia* does not address directly whether § 1252(d)(1) applies to habeas petitions.

One could infer that *Rojas–Garcia* was construing § 1252(d)(1) and was simply citing *Liu* by analogy, given the similarity of language between former § 1105a(c) and § 1252(d)(1). This inference is strengthened by *Rojas–Garcia's* citation to present § 1252(d) in the same paragraph as the *Liu* citation. Nevertheless, *Rojas–Garcia* does not expressly consider the application of § 1252(d)(1), so we are better off assuming that *Rojas–Garcia* did not settle a question it did not directly confront.

Finally, in *Barron v. Ashcroft*, 358 F.3d 674, 678(9th Cir.2004), we held that for petitions on direct appeal " § 1252(d)(1) mandates exhaustion and therefore generally bars us, for lack of subject-matter jurisdiction, from reaching the merits of a legal claim not presented in administrative proceedings below." But *Barron* did not address the application of § 1252(d)(1) to habeas petitions.

We therefore begin relatively afresh to determine whether § 1252(d)(1) requires exhaustion of administrative remedies before filing a habeas petition concerning a removal order. Our canvas is not a complete *tabula rasa*, however. Case law under the predecessor exhaustion provision, § 1105a(c), held that "habeas corpus review of an order of exclusion is permitted

---

5. Former § 1105a(c) read:

> An order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations or if he has departed from the United States after the issuance of the order. Every petition for review or for habeas corpus shall state whether the validity of the order has been upheld in any prior judicial proceeding, and, if so, the nature and date thereof,

> and the court in which such proceeding took place. No petition for review or for habeas corpus shall be entertained if the validity of the order has been previously determined in any civil or criminal proceeding, unless the petition presents grounds which the court finds could not have been presented in such prior proceeding, or the court finds that the remedy provided by such prior proceeding was inadequate or ineffective to test the validity of the order.

under section 1105a(c) only following exhaustion of administrative remedies." *Xiao v. Barr*, 979 F.2d 151, 155 (9th Cir. 1992). The phrase "shall not be reviewed by any court" in former § 1105a(c) therefore included, according to our jurisprudence, courts reviewing habeas petitions.

IIRIRA eliminated former § 1105a(a)(10), which stated that "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." Before IIRIRA, "immigration lawyers [bringing habeas petitions] primarily relied on [INA] § 106(a)(10) [8 U.S.C. § 1105a(a)(10) ] ... because that statute, in contrast to [28 U.S.C.] § 2241, contained no textual boundary on claims of error that could be raised on habeas." *Gutierrez–Chavez v. INS*, 298 F.3d 824, 828 (9th Cir.2002); *see also Magana–Pizano v. INS*, 200 F.3d 603, 608 n. 5 (9th Cir.1999). The general habeas statute, 28 U.S.C. § 2241, "limits claims to those that allege violations of the constitution, federal statute, or treaties," *Gutierrez–Chavez*, 298 F.3d at 828, while former § 1105a(a)(10) contained no such limitation. Our prior case law interpreting § 1105a(c), however, did not depend on any connection between that provision and § 1105a(a)(10), but rather considered the exhaustion provision on its own terms, as we do here for § 1252(d)(1).

We thus have no indication in the statute itself that Congress intended through IIRIRA's enactment of § 1252(d)(1) to remove the exhaustion requirement for habeas petitions that we had previously decided was contained in the very similar language of former § 1105a(c). Sun argues, however, that the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), requires us now to construe § 1252(d)(1) to exclude habeas petitions.

St. Cyr addressed certain jurisdiction-stripping provisions of § 1252 that employ the term "judicial review." The INS argued that these provisions eliminated federal courts' habeas jurisdiction, but the Court held that when the provisions in question "speak of 'judicial review,' " Congress meant "full, nonhabeas review." 533 U.S. at 312, 121 S.Ct. 2271. Said the Court:

> [W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed. In such case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them.

*Id.* at 312 n. 35, 121 S.Ct. 2271 (quoting *Morissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952)). Because § 1252(d) also uses the term "review," Sun argues that *St. Cyr* requires that we read "review" with respect to § 1252(d)(1) as limited to non-habeas review, so that statutory exhaustion is not required for habeas petitioners challenging their removal orders under 28 U.S.C. § 2241.

**B.** *Decisions of Other Circuit Courts*

Four courts of appeals have addressed the scope of the exhaustion requirement in § 1252(d)(1), all holding that the provision applies to habeas petitions filed under 28 U.S.C. § 2241. Two of these decisions did not incorporate any analysis of *St. Cyr*: The Third Circuit in *Duvall v. Elwood*, 336 F.3d 228 (3d Cir.2003), largely relied on its prior analysis of former § 1105a(c). *See id.,* 336 F.3d at 231–32. *Duvall* also re-

ferred to current § 1252(d)(1)'s legislative history:

> The [scant] legislative history that does exist strongly suggests that the purpose of the two provisions is one and the same. Indeed, the House's conference report states that the recodification was a "restate[ment of] the current provisions in the first ... sentence[ ] of subsection (c) of current section 106 requiring that a petitioner have exhausted administrative remedies." H.R. Conf. Rep. No. 104–828, at 220 (1996); *see also id.* at 219 ("This section [306] amends INA section 242 to revise and restate the provisions in current section 106, which is repealed.").

336 F.3d at 232 n. 6; *see also Sousa v. INS,* 226 F.3d 28, 31 (1st Cir.2000) (noting prior to *St. Cyr* that "[n]ot much precedent exists as to section 242(d), but it merely 'restates' its precursor, former INA section 106(c)").[6] Although *Duvall* did not consider the implications of *St. Cyr* for its exhaustion holding, the Third Circuit recognized that *Sundar v. INS,* 328 F.3d 1320, 1324–25 (11th Cir.), *cert. denied* —— U.S. ——, 124 S.Ct. 531, 157 L.Ed.2d 412 (2003), held with reference to *St. Cyr* that § 1252(d)(1) applies to habeas petitions. *See Duvall,* 336 F.3d at 231 n. 5.

Sundar had argued, as Sun does here, that *St. Cyr's* distinction between "judicial review" and "habeas corpus," *see St. Cyr,* 533 U.S. at 311, 121 S.Ct. 2271, means that judicial "review" as specified in § 1252(d)(1) does not encompass habeas petitions. *See Sundar,* 328 F.3d at 1324. The Eleventh Circuit rejected the distinction, however, because *St. Cyr* addressed a situation in which the alternative reading would have led to a "complete preclusion of jurisdiction," implicating constitutional concerns about repeal of federal courts' habeas jurisdiction. *Id.* at 1324. "Compelling a petitioner to seek review of an immigration order in the BIA before he can seek to have it set aside in a habeas proceeding is different from barring all habeas review of the order regardless of exhaustion. The difference is that between a reasonable condition precedent and an unconditional preclusion." *Id.*

Most recently, the Second Circuit in *Theodoropoulos v. INS,* 358 F.3d 162 (2d Cir.2004), followed *Sundar's* reading of *St. Cyr* as limited to constitutional avoidance: "[U]nlike the Court in *St. Cyr* ... we are not faced with a substantial constitutional question and, therefore, we need not resort to canons of statutory construction beyond the most basic one: construing § 1252(d) according to its plain meaning." *Id.* at 171. The *Theodoropoulos* court "recognize[d] that reading the term 'review' in § 1252(d) as applying to habeas review would mean that this court reads the same term in the same statute in two different ways, which would conflict with the normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." *Id.* (quotation marks and citation omitted). Nevertheless, the statutory purpose behind § 1252(d)(1) of giving the BIA "a full opportunity to consider a petitioner's claims before they are submitted for review by a federal court ... would be entirely undermined if an alien could simply bypass administrative remedies and direct review and, instead, assert all claims by way of a habeas petition filed pursuant to 28 U.S.C. § 2241." *Theodoropoulos,* 358 F.3d at 171.[7]

---

6. We do not regard the excerpts relied upon in *Duvall* as particularly informative, given the reference to "revis[ion]."

7. We note that this account of the impact of adopting the view that § 1252(d)(1) does not apply to habeas petitions is exaggerated. As *Castro–Cortez* explains, absent a statutory ex-

## C. *"Review" in Section 1252*

After undertaking our own close reading of § 1252, we agree with the other circuits that have considered the question and hold that § 1252(d)(1) imposes a statutory exhaustion requirement on immigration habeas petitioners.

*St. Cyr* interpreted "review" in three subsections of § 1252, §§ 1252(a)(1),[8] (a)(2)(C),[9] and (b)(9),[10] to subsume only direct appeals, not habeas petitions. *St. Cyr* stated that "[b]oth §§ 1252(a)(1) and (a)(2)(C), speak of 'judicial review'—that is, full, nonhabeas review." *St. Cyr*, 533 U.S. at 312–14, 121 S.Ct. 2271. Similarly, the Court held that the phrase "judicial review of a final order under this section" in § 1252(b)(9) could refer only to direct appeals, not habeas petitions. *St. Cyr*, 533 U.S. at 313–14, 121 S.Ct. 2271.[11]

 *St. Cyr's* interpretation, however, was, as *Sundar* and *Theodoropoulos* noted, strongly informed by the consideration, not here applicable, that an alternative ruling would have raised a substantial constitutional question by precluding habeas review where none other was available.

See id. at 314, 121 S.Ct. 2271. And while it is a "normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning," *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) (quotation marks and citation omitted), this rule creates only a rebuttable presumption regarding the meaning of similar language:

> Most words have different shades of meaning, and consequently may be variously construed, not only when they occur in different statutes, but when used more than once in the same statute or even in the same section. Undoubtedly, there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning. But the presumption is not rigid and readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent. Where the subject-matter to which the words refer is

haustion requirement, we still apply prudential exhaustion requirements on habeas. *See Castro–Cortez*, 239 F.3d at 1047.

8. Section 1252(a)(1) states that: "Judicial review of a final order of removal (other than an order of removal without a hearing pursuant to section 235(b)(1)) is governed only by chapter 158 of title 28 of the United States Code, except as provided in subsection (b) and except that the court may not order the taking of additional evidence under section 2347(c) of such title."

9. Section 1252(a)(2)(C) states that: "Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in [designated sections]."

10. Section 1252(b)(9) states that: "Judicial review of all questions of law and fact, includ-

ing interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this title shall be available only in judicial review of a final order under this section."

11. There are some provisions other than those examined in *St. Cyr* that look in the same direction. Section 1252(b), for example, plainly uses "review" to mean direct review, stating: "With respect to review of an order of removal ... [t]he petition for review must be filed not later than 30 days after the date of the final order of removal." In addition, the provision immediately preceding § 1252(d)(1) refers to"[a] petition for review *or for habeas corpus* of an order of removal," 8 U.S.C. § 1252(c)(1) (emphasis added), evidently distinguishing between "review" and habeas proceedings.

not the same in the several places where they are used, or the conditions are different, or the scope of the legislative power exercised in one case is broader than that exercised in another, the meaning well may vary to meet the purposes of the law, to be arrived at by a consideration of the language in which those purposes are expressed, and of the circumstances under which the language was employed.

*Atlantic Cleaners & Dyers v. United States,* 286 U.S. 427, 433, 52 S.Ct. 607, 76 L.Ed. 1204 (1932) (internal citation omitted); *see also Vanscoter v. Sullivan,* 920 F.2d 1441, 1448 (9th Cir.1990) ("Identical words appearing more than once in the same act, and even in the same section, may be construed differently if it appears they were used in different places with different intent.").

Taking into account our interpretation of prior § 1105a(c), as well as the statutory clues most directly pertinent to § 1252(d)(1), we conclude that section 1252 is best interpreted to encompass multiple meanings of the word "review," with § 1252(d)(1) referring both to direct appeals and to habeas petitions.[12]

A persuasive reason for construing § 1252(d)(1) to include habeas petitions arises from § 1252(d)(2), the provision situated closest to it. Section 1252(d)(2) provides that "[a] court may review a final order of removal only if—... (2) another court has not decided the validity of the order, unless the reviewing court finds that the petition presents grounds that could not have been presented in the prior judicial proceeding or that the remedy provided by the prior proceeding was inadequate or ineffective to test the validity of the order." As stated by the Second Circuit, "although § 1252(d) fails to expressly mention habeas corpus or § 2241 ... its recitation in subsection (2) of the effect that prior judicial proceedings have on the scope of a subsequent court's review seems plainly to contemplate habeas review." *Theodoropoulos,* 358 F.3d at 171–72.

■■■ "Of paramount importance to any exhaustion inquiry is congressional intent." *Wang v. Reno,* 81 F.3d 808, 814(9th Cir.1996) (quotation marks and citation omitted). The principal purpose animating the exhaustion requirement is to " 'avoid[ ] premature interference with the agency's processes and help[ ] to compile a full judicial record.' " *Rojas–Garcia,* 339 F.3d at 819 (citing *Liu,* 55 F.3d at 424). This intent renders § 1252(d)(1) distinct from those provisions considered in *St. Cyr,* "which sought to foreclose judicial review of certain INS decisions," *Theodoropoulos,* 358 F.3d at 171. In the present context, unlike in *St. Cyr,* we do not confront the need to avoid the constitutional problems associated with the abrogation of habeas jurisdiction that informed *St. Cyr's* interpretation of the statutory provisions there at issue. As the purpose of § 1252(d)(1) is not to foreclose judicial review but better to inform it when it occurs, there is reason to give broader scope to the term "review"

---

12. *Xi v. INS,* 298 F.3d 832 (9th Cir.2002), does not counsel a contrary result. In *Xi,* we applied a statutory construction of § 1231(a)(6) to inadmissible aliens after *Zadvydas v. Davis,* 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), had construed *that very provision* as applied to deportable aliens. "The government has offered no authority suggesting that a litigant may not take advantage of a statutory interpretation that was guided by the principle of constitutional avoidance when that litigant's case does not present the constitutional problem that prompted the statutory interpretation." *Xi,* 298 F.3d at 839. In this case, by contrast, we address the use of the term "review" not in one of the same statutory provisions at issue in *St. Cyr* but in a separate subsection of the statute.

than when preclusion of judicial review is at issue. *St. Cyr* therefore provides no basis for departing from our prior case law interpreting former § 1105a(c). There are good reasons not to do so, not the least of which is that all the other circuits which have considered the issue have held that § 1252(d)(1) imposes a statutory exhaustion requirement on habeas petitioners, two in analyses that take account of *St. Cyr.* We therefore hold that § 1252(d)(1) establishes a statutory administrative exhaustion requirement applicable to habeas petitioners.[13]

D. *Scope of the Exhaustion Requirement*

To hold that § 1252(d)(1) applies to habeas petitions is not to delineate the scope of the exhaustion requirement thus imposed. Sun argues that he should be excused from his failure to exhaust his nonconstitutional claims because his arguments were foreclosed by a prior BIA en banc decision. Sun's principal claim in this appeal, made for the first time in his habeas petition, is that his refugee status was not terminated as a result of his adjustment to LPR status at age four.[14]

■ "Where a statute specifically requires exhaustion," the requirement is not excused based "merely [on] a judicial conclusion of futility." *Saulsbury Orchards & Almond Processing, Inc. v. Yeutter,* 917 F.2d 1190, 1196 (9th Cir.1990) (quotation marks and citation omitted); *see also* II Kenneth Culp Davis et al., *Administrative Law Treatise* § 15.3 at 318 (3d ed. 1994) ("Most agency organic acts do not address exhaustion. When they do, however,

courts are not free simply to apply the common law exhaustion doctrine with its pragmatic, judicially defined exceptions. Courts must, of course, apply the terms of the statute."). In *Booth v. Churner,* 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001), the Supreme Court instructed that courts should "not read futility or other exceptions into statutory exhaustion requirements *where Congress has provided otherwise*" (emphasis added). The provision addressed in *Booth* "requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions." *Id.* at 733–34, 121 S.Ct. 1819 (citation omitted). Based on careful consideration of that language, *Booth* held that "Congress has provided in [42 U.S.C.] § 1997e(a) that an inmate must exhaust *irrespective of the forms of relief sought and offered through administrative avenues.*" *Id.* at 741 n. 6, 121 S.Ct. 1819 (emphasis added).

■ Because "[t]he doctrine of administrative exhaustion should be applied with a regard for the particular administrative scheme at issue," *Saulsbury Orchards,* 917 F.2d at 1196 (citing *Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)), we look to the terms of § 1252(d)(1) to determine Congress's intent concerning the provision's scope. Unlike the exhaustion provision in *Booth,* § 1252(d)(1) requires the exhaustion only of remedies "available ... *as of right*" (emphasis added). Addressing the scope of § 1252(d)(1) in *Castro–Cortez,* we explained that the statutory exhaustion re-

---

**13.** It should be apparent that nothing in this opinion is intended to impose a statutory requirement of *judicial* exhaustion prior to filing a habeas petition under 28 U.S.C. § 2241. Exhaustion of judicial proceedings is required only as a prudential matter. *See Castro–Cortez,* 239 F.3d at 1047.

**14.** Although Sun makes statutory and regulatory arguments to advance his claim, he does not raise "a question concerning the validity of an INS regulation because of conflict with a statute," which would not have required exhaustion. *See Espinoza–Gutierrez v. Smith,* 94 F.3d 1270, 1273 (9th Cir.1996).

quirement applies only to those remedies not constrained by past adverse administrative decisions. To qualify as a remedy "available to the alien as of right" under § 1252(d)(1), a remedy must enable the agency to give unencumbered consideration to whether relief should be granted:

> When the BIA receives ... a motion [to reopen], it need only consider whether to reopen its prior order, but it is not required to do so. *Castillo–Villagra v. INS*, 972 F.2d 1017, 1023–24 (9th Cir. 1992).[15] In that case, we held that because the BIA need not actually reopen its prior decision, a motion to reopen is considered a request for discretionary relief, and does not constitute a remedy that must be exhausted. *Id.*

Like the motion to reopen in *Castillo–Villagra*, the opportunity to make a statement is not an "administrative remed[y] available to the alien as of right," because *the government is not required to reconsider its prior decision.* Rather, the officer need only *consider whether to reconsider a final determination.* Because the relief is discretionary, it is not a remedy as of right that must be exhausted before judicial review

is authorized. *See* § 242(d)(1)[8 U.S.C. § 1252(d)(1) ].

239 F.3d at 1045 (emphasis added); *see also Noriega–Lopez*, 335 F.3d at 881 ("[M]otions to reconsider, like motions to reopen, are not 'remedies available ... as of right' within the meaning of 8 U.S.C. § 1252(d)(1)."). Of course, for remedies unavailable as of right, prudential exhaustion requirements still apply. *See Castro–Cortez*, 239 F.3d at 1047; *see also Hernandez v. Reno*, 238 F.3d 50, 55 (1st Cir.2001) ("[T]o the extent that the Board does provide currently available remedies as a matter of grace, a court is free to require exhaustion of such remedies—not because of any jurisdictional objection or statutory command but simply because it makes sense.").

■ Some issues may be so entirely foreclosed by prior BIA case law that no remedies are "available ... as of right" with regard to them before. IJs and the BIA. The realm of such issues, however, cannot be broader than that encompassed by the futility exception to prudential exhaustion requirements. *Cf. Iddir v. INS*, 301 F.3d 492, 498 (7th Cir.2002) (applying the prudential futility exception directly to § 1252(d)(1)'s exhaustion requirement).[16]

---

**15.** *Castro–Cortez* includes the following footnote at this juncture of the opinion: "*Castillo–Villagra* applied the pre-IIRIRA exhaustion requirement, 8 U.S.C. § 1105a(c) (repealed 1996), that was replaced with INA § 242(d)(1) [8 U.S.C. § 1252(d)(1) ].... The 'available as of right' language was not modified by IIRIRA, and therefore our precedent concerning its interpretation applies to INA § 242(d)(1) just as it did to its predecessor."

**16.** There is agreement among the circuits that have addressed the issue that exceptions do apply to § 1252(d)(1), although the contours of such exceptions remain to be fully developed. *See Theodoropoulos*, 358 F.3d at 173("Regardless of the precise boundaries of this possible exception, we find that it would not apply to the case at hand because an appeal to the BIA did provide Theodoropou-

los with the possibility of relief.... [I]t is more than a theoretical possibility that Theodoropoulos could have obtained some form of relief through an appeal to the BIA."); *Goonsuwan v. Ashcroft*, 252 F.3d 383, 389 (5th Cir.2001) ("Even when exhaustion is a jurisdictional bar, this Court recognizes an exception when administrative remedies are inadequate.") (quotation marks and citation omitted); *Sousa*, 226 F.3d at 32("Even where statutes impose an exhaustion requirement the Supreme Court has, despite the rhetoric of jurisdiction, carved out exceptions.... [W]e think it is unnecessary in this case to decide whether, in a case that threatened a miscarriage of justice, we could forgive the failure to raise a clearly meritorious claim in the removal proceedings.").

We therefore use the futility cases as a guide to the interpretation of the "available ... as of right" requirement.

■ "[T]here is no requirement of [prudential] exhaustion where resort to the agency would be futile. Thus, where the agency's position on the question at issue appears already set, and it is very likely what the result of recourse to administrative remedies would be, such recourse would be futile and is not required." *El Rescate Legal Services, Inc. v. Executive Office for Immigration Review*, 959 F.2d 742, 747(9th Cir.1991) (quotation marks and citations omitted). In *El Rescate*, the BIA had "announced and reaffirmed its policy regarding translation of immigration proceedings, and its understanding of the requirements of the due process clause." *Id.* Similarly, in *SAIF Corp./Oregon Ship v. Johnson*, 908 F.2d 1434(9th Cir.1990), the "[Benefits Review] Board's position on the issue in question appear[ed] already set," because a Board decision had "held unequivocally" against the plaintiff's argument, such that "it is very likely what its result would have been." *Id.* at 1441. Applying these standards by analogy to the case at hand, we conclude that Sun has not demonstrated that raising the non-constitutional claims he seeks to adjudicate on habeas would have been futile.

■ Sun could have raised those issues before the agency. *See INS v. Aguirre–Aguirre*, 526 U.S. 415, 424–25, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999) (explaining the role of the Attorney General and the BIA as primary interpreters of the Immigration and Nationality Act). Sun maintains otherwise, contending that *Matter of Bahta*, 22 I. & N. Dec. 1381, 1382 n. 2 (BIA 2000) (en banc), had already decided the issue he wishes to raise. *Bahta* made the following statement in a footnote to its facts section:

> The Immigration Judge also terminated the proceedings on the ground that the Service failed to demonstrate that the respondent's refugee status had been terminated after notice and hearing. The record indicates, however, that the respondent adjusted his status to that of a lawful permanent resident on November 4, 1982. *The respondent's former status as a refugee, therefore, does not provide a basis for terminating the proceedings.*

(emphasis added).

This summary reference reads simply as a statement concerning the application of law not disputed by the parties to the facts of the case. As such, *Bahta* is insufficient for us to conclude that Sun's opportunity to raise before the agency the rather complicated and technical arguments he now asks us to address would not have served as an "administrative remed[y] available ... as of right" pursuant to § 1252(d)(1). The ultimate question Sun raises here is whether, as an alien originally admitted as a refugee, he should be permitted to request a waiver of inadmissibility under INA § 209(c), 8 U.S.C. § 1159(c), applicable to the adjustment of status of refugees.[17] *Bahta* did not in its single sentence render a holding on that question, such that "the agency's position on the question at issue appears already set." *El Rescate*, 959 F.2d at 747. There is no discussion in *Bahta*, for example, of the

---

17. 8 U.S.C. § 1159(c) states: "The provisions of paragraphs (4), (5), and (7)(A) of section 212(a) [8 U.S.C. § 1182(a)] shall not be applicable to any alien seeking adjustment of status under this section, and the Attorney General may waive any other provision of such section (other than paragraph (2)(C) or subparagraph (A), (B), (C), or (F) of paragraph (3)) with respect to such an alien for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest."

statutory and regulatory provisions on which Sun now relies, *see, e.g.,* 8 U.S.C. §§ 1157(c)(4), 1159; 8 C.F.R. §§ 207.9, 223.2(b)(2)(i), nor any indication that the agency in *Bahta* was presented with any arguments based on these provisions or on the other sources referred to by Sun. By requiring exhaustion of Sun's claim, § 1252(d)(1) would have given the agency an opportunity fully to address the implications of terminated LPR status for those admitted as refugees, including the availability of a § 1159(c) waiver, to the benefit of all parties and courts involved in this habeas litigation. As Sun's arguments do not meet the futility standard for prudential exhaustion, they necessarily come within the "as of right" limitation to § 1252(d)(1).

 We therefore conclude that Sun falls within the scope of § 1252(d)(1)'s exhaustion requirement with regard to his statutory arguments.[18]

## II

### Observation

We are aware that the practical effect of our opinion is to clear the legal path for Sun's removal to a country from which his family fled as refugees before he was born. Sun's case is not unique in this regard. *See generally* Deborah Sontag, *In a Homeland Far from Home,* N.Y. TIMES MAG., Nov. 16, 2003, at 48(estimating the number of similar cases at 1,600); Chris McGann, *Refugees with a Record Face Shock—Deportation,* SEATTLE POST-INTELLIGENCER, Jun. 14, 2002, at A1 (referring to Sun as an example of those potentially affected by a new deportation agreement between Cambodia and the United States). Beyond echoing the concern expressed by a prior panel of this court about removing individuals who came to this country long ago as babies, *see Munoz v. Ashcroft,* 339 F.3d 950, 958–59 (9th Cir.2003), it is not our province to pass on the wisdom of the INS's actions. Unlike Munoz, Sun did commit a crime, for which he was found removable. His sentence was two days more than the one-year threshold that defines an aggravated felony. *See* 8 U.S.C. § 1101(a)(43)(G). However, in light of Sun's twenty-five year stay in this country as a lawfully-admitted infant refugee and the nature of the aggra-

---

18. Sun also makes due process challenges to his potential removal. "We have made an exception to the exhaustion requirement for constitutional challenges to statutes and to the administrative rules of procedure. However, there is an important qualification to this exception to the general rule requiring exhaustion: If an alleged procedural error could have been challenged before the BIA and was not, we lack jurisdiction to review it." *Silva–Calderon v. Ashcroft,* 358 F.3d 1175, 1177–78 (9th Cir.2004) (citations omitted). To the extent that Sun's procedural due process arguments are more than a repetition of his substantive constitutional claims, he did not present the arguments to the BIA, so we are without jurisdiction to review them.

Sun's objection to the ineligibility of aggravated felons for relief is foreclosed by *Taniguchi v. Schultz,* 303 F.3d 950 (9th Cir.2002), which relied upon "the legitimate goal of rapidly removing criminal aliens" to uphold the exclusion of relief for LPR aggravated felons. *Id.* at 958; *see also id.* at 957("A statute that limits the relief available to a certain class of aliens will be valid unless wholly irrational."). Finally, in raising the potential separation from his mother, sisters, and brother that his removal would cause, Sun points to no authority supporting the proposition that there is a fundamental liberty interest for adults to remain in the United States because their parents and siblings are here. *Cf. Landon v. Plasencia,* 459 U.S. 21, 23, 34, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) (stating in circumstances involving respondent's American citizen spouse and minor children that "the right to rejoin [one's] immediate family [is] a right that ranks high among the interests of the individual"). We therefore find no merit to his substantive due process claim based on interference with family rights.

vated felony for which he was convicted, the proportionality of his punishment for that transgression should be open to question, by the legislative and executive branches if not our own.

### Conclusion

Sun's failure to exhaust his administrative remedies prevents us from reviewing his refugee status claim. No constitutional violation would arise from Sun's removal. We therefore affirm the district court's denial of the petition for habeas corpus.

**AFFIRMED.**